POLYVEND, INC., Plaintiff-Appellant, *v.* THEODORE PUCKORIUS, Indiv. and as Director of the Department of Administrative Services, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 77-1740

Opinion filed June 7, 1978.

Foran, Wiss & Schultz, of Chicago (Richard Schultz and Ian Levin, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Michael J. Hayes, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Polyvend, Inc. (Polyvend) submitted the only bid to manufacture the 1979 motor vehicle license plates for the State of Illinois.

The bid was rejected by the State pursuant to the Illinois Purchasing Act (Ill. Rev. Stat. 1977, ch. 127, par. 132.10—1), which provides:

> "No person or business entity shall be awarded a contract or subcontract if that person or business entity: (a) has been convicted of bribery or attempting to bribe an officer or employee of the State of Illinois in that officer or employee's official capacity; or (b) has made an admission of guilt of such conduct which is a matter of record but has not been prosecuted for such conduct.
>
> For purposes of this Section, where an official, agent, or employee of a business entity committed the bribery or attempted bribery on behalf of such an entity and pursuant to the direction or authorization of a responsible official thereof, the business entity shall be chargeable with the conduct."

The plaintiff immediately filed a declaratory judgment action requesting the court to declare that portion of the Purchasing Act unconstitutional; the plaintiff also asked for injunctive relief and damages. The trial court granted the defendant's motion for summary judgment and the plaintiff's appeal follows.

The plaintiff is a manufacturer of license plates. On or about September 18, 1977, the Illinois Department of Administrative Services advertised for bids for a contract to manufacture the 1979 multiyear motor vehicle license plates. On October 12, 1977, the plaintiff made the only bid on the contract. On November 18, 1977, the State purchasing agent sent a telegram and a letter advising the plaintiff that the bid was rejected pursuant to certain Department of Administrative Services' purchasing rules and regulations, which are not an issue in this case, and because of the statute that was previously cited.

The bid for the license plates contract was signed by Patrick J. Stoltz as president of Polyvend. Stoltz, while an officer of Metal Stamping Corporation (Metal Stamping), on March 6, 1974, approximately 3½ years prior to submitting the bid in this case, pleaded guilty to the charge of bribery of an Illinois official. Metal Stamping at that time owned all of the stock of Polyvend. On June 30, 1974, Metal Stamping merged Polyvend into Metal Stamping and a few days later Metal Stamping changed its name to Polyvend. Metal Stamping was the successful bidder for Illinois license plates contracts in 1976 and again in 1977. Polyvend was the successful bidder in 1978. There is no explanation in the record of how the contract was granted to Metal Stamping for the years 1976 and 1977 when at the time those bids were let, the name of Metal Stamping had already been changed to Polyvend.

The plaintiff makes a number of attacks on the statute. We will only consider its contention that the statute violates procedural due process of

law under the Federal and State constitutions. Our resolution of that issue is dispositive of this appeal. The plaintiff charges that the statute finds an entity guilty of bribery by legislative fiat without providing for any due process such as notice of the charge, a hearing before an impartial tribunal, an opportunity to be heard and the right to a review of the decision. Without these safeguards, the plaintiff states, an unknown person made a factual determination that: Polyvend is the same "business entity" as Metal Stamping; Stoltz was an official, agent or employee of that business entity; and Stoltz committed bribery on behalf of that entity pursuant to the direction and authorization of a responsible officer of the entity.

The plaintiff argues that the holding in *Gonzalez v. Freeman* (D.C. Cir. 1964), 334 F.2d 570 is applicable here. In *Gonzalez*, Thomas P. Gonzalez, Carmen Gonzalez, Thomas P. Gonzalez Corporation and others received a telegram stating that they and any corporation in which Thomas or Carmen Gonzales was a partner or officer were "temporarily debarred from doing business with Commodity Credit [Corporation] pending investigation into possible misuse of official inspection certificates * * *." (*Gonzalez*, at 572.) The suspension was for five years. The Thomas P. Gonzalez Corporation had a record of contractual relations with the Commodity Corporation for a number of years. Prior to the debarment, Thomas P. Gonzalez pled guilty to a misdemeanor based on his misuse of official inspection certificates. The United States Circuit Court of Appeals held that Thomas P. Gonzalez individually and Thomas P. Gonzalez Corporation were entitled to summary judgment because the debarment was imposed without observance of procedural requirements and hence in excess of statutory jurisdiction and authority.

The defendant responds that before procedural due process guaranties attach, the plaintiff must show that some guaranteed right will be affected or deprived by the action of the government. In the present matter, it urges, the plaintiff has no such interest since the plaintiff has no right to perform government contracts citing *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 84 L. Ed. 1108, 60 S. Ct. 869. The invitation to bid gives the State the unqualified right to reject any and all bids and to readvertise for submission. The defendant distinguishes *Gonzalez* by pointing out that it involved an existing relationship between those plaintiffs and the Commodity Credit Corporation, whereas in the instant case the party initially seeking the government contract has no protectable property right to which procedural due process would attach. Similarly it distinguishes *Bio-Medical Laboratories v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, since in that case the protectable property right was the "continued participation" in statutorily created public aid programs. *Hathaway v. Mathews* (7th Cir. 1976) 546 F.2d 227, *Chicagoland*

*Agencies, Inc. v. Palmer* (1936), 364 Ill. 13, 2 N.E.2d 910 and *Mayhew v. Nelson* (1931), 346 Ill. 381, 178 N.E.2d 921, were also inapplicable for comparable reasons.

We cannot accept the distinctions as drawn by the defendant. *Perkins*, indeed, holds that no citizen has the "right" to do business with the government. There iron and steel manufacturers attempted to restrain the Secretary of Labor from carrying out an administrative determination that all future government contracts would contain a contractual condition requiring a supplier to pay the prevailing minimum wage to its employees. The Supreme Court held the manufacturers were prospective bidders and did not have standing to challenge the Secretary's determination because the government could impose contractual conditions on the parties with whom it had chosen to contract. The manufacturers were unable to show that any legal right had been invaded or threatened. *Perkins* was distinguished in *Bio-Medical Laboratories, Inc.* In that case the plaintiff had participated in the Medicaid program for approximately seven years and 90% of its business involved Medicaid payments. The court, in distinguishing *Bio-Medical* from *Perkins*, said that the plaintiff "possesses a legal interest which is threatened, that being its expectation of continuing to receive Medicaid payments on behalf of Medicaid recipients it services." Citing *Hathaway* and *Case v. Weinberger* (2d Cir. 1975) 523 F.2d 602, the court stated that this expectation interest had been recognized as a protectable legal interest. Here, as in *Bio-Medical Laboratories, Inc.*, the plaintiff's relationship with the government must be analyzed and cannot be dismissed under the rubric of *Perkins* that the plaintiff has no right to perform government contracts.

*Gonzalez* considers a debarment as does the case at bar. Although *Gonzalez* was decided on Federal statutory grounds and not on the basis of the constitution, we think the rationale is equally applicable to the constitutional issue raised here. The court stated that:

"*Disqualification from bidding or contracting for five years* directs the power and prestige of government at a particular person and, as we have shown, may have a serious economic impact on that person. Such debarment cannot be left to administrative improvisation on a case-by-case basis. The governmental power must be exercised in accordance with accepted basic legal norms. Considerations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based on the record so made." (*Gonzalez*, at 578.)

We do not believe that *Gonzalez* can be distinguished from the case at bar on the basis that *Gonzalez* involved an existing relationship similar to that in *Bio-Medical Laboratories, Inc.* and there is no such relationship here. The plaintiff did not simply lose a bid on a contract. The plaintiff has been forever barred from bidding on any contract based on a determination by an administrative agency without any procedural safeguards. The interest here is not merely a potential opportunity to perform a contract with the State of Illinois. Here the powers of government are directed toward an individual barring him from an opportunity to contract to supply goods and services to the government. This is a significant aspect of commercial life and a State's determination to absolutely bar participation in it requires procedural safeguards.

The defendant argues that even if there is a property right that has been affected questions still remain as to what procedural due process requires. It suggests that the court must balance the factors set out in *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893, to determine whether a hearing is required: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous determination of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved in the fiscal and administrative burdens that the additional or substitute procedural safeguards will entail. (*Mathews*, at 334-35.) The defendant states that the private interest involved could only be the potential opportunity to perform a contract with the State. As stated immediately above we do not believe that the debarment proceeding can be characterized as merely a potential opportunity to perform a contract with the State. Debarring of a person from any opportunity to contract with the government is a protectable interest.

Further, the defendant says that the risk of erroneous deprivation is minimal because the decision to apply the act is made by mere recognition of the conviction for bribing a State official. The statutory requirements are not so simple and the consequences of an erroneous decision are more substantial than the defendant suggests. The determination that an officer or employee was acting "in that officer or employee's official capacity" involves a factual evaluation of the employee's relationship with the company. There may be a substantial margin of error in making this decision and charging the corporation with the responsibility for the actions of its employees. That determination cannot be deemed a minimal risk. Finally, the defendant argues that the government interest in efficient and economical procurement practices would be severely damaged by forcing the State to provide administrative hearings for every disqualified or disgruntled bidder. We

do not see the statute as aimed at persons disqualified by not receiving the bid on a contract. The statute effectively bars a very small class of people, those who have been convicted or who have admitted bribing or attempting to bribe an officer or employee of the State of Illinois who is acting in an official capacity. The fiscal and administrative burdens in providing some procedural safeguards will not be prohibitive.

For the reasons stated we find that the plaintiff has a property interest which is protectable under the due process guaranties of the Federal and State constitutions. The statute, by not providing some procedural safeguards, is in contravention of those rights and is consequently unconstitutional. The order of the circuit court granting summary judgment to the defendant is reversed and the order denying summary judgment to the plaintiff is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McNAMARA and McGILLICUDDY, JJ., concur.