717 F.2d 385
 COYNE-DELANY CO., INC., Plaintiff-Appellee,
v.
CAPITAL DEVELOPMENT BOARD OF the STATE OF ILLINOIS,
Defendant-Cross-Plaintiff-Appellant,
v.
HANOVER INSURANCE COMPANY, Cross-Defendant-Appellee.
 No. 83-1254.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 7, 1983.
Decided Sept. 12, 1983.
 
 Jeffrey W. Finke, Deputy Atty. Gen., Chicago, Ill., for defendant-cross-plaintiff-appellant.
 Robert H. Ellch, Scariano, Kula & Asso., P.C., Chicago Heights, Ill., for cross-defendant-appellee.
 Before ESCHBACH and POSNER, Circuit Judges, and DUMBAULD, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 The principal questions for decision are the extent of the district court's power to deny damages to a defendant injured by the issuance of a preliminary injunction that is later reversed on appeal, and the proper standard for exercising that power.
 
 
 2
 The genesis of this case is an otherwise unrelated civil rights suit brought by inmates of the Illinois state prison at Stateville complaining about living conditions. A decree was entered requiring the prison to replace all of the plumbing fixtures in one of the prison's cellhouses. The state's Capital Development Board let a contract for the first of two projected phases of the work to Naal Plumbing & Heating Co., which subcontracted with Coyne-Delany Company for the flush valves required in the project. (Coyne-Delany is one of the nation's two principal manufacturers of flush valves for toilets, the other being the Sloan Company.) The valves were installed, and malfunctioned. After Coyne-Delany shipped redesigned valves which also malfunctioned, the prison authorities asked the Capital Development Board to designate another valve subcontractor in the bidding specifications for the second phase of the contract. The Board complied, designating Sloan.
 
 
 3
 Bids were received, but on May 7, 1979, two days before they were to be opened, Coyne-Delany sued the Board under section 1 of the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, and on May 8 it obtained a temporary restraining order against the Board's opening the bids. The state asked that Coyne-Delany be ordered to post a $50,000 bond, pointing out that the temporary restraining order was preventing it from proceeding with the entire project and that indefinite delay could be extremely costly. But Judge Perry, the emergency motions judge, required a bond of only $5,000, in the belief that the temporary restraining order would be in effect for only a week until Judge Bua could hear the motion for a preliminary injunction. However, at the preliminary-injunction hearing Judge Bua issued the injunction but refused to increase the bond.
 
 
 4
 Although the terms of the bond are limited to the damages caused by the temporary restraining order, which presumably were trivial, and a TRO bond does not automatically apply to a subsequently issued preliminary injunction, Steinberg v. American Bantam Car Co., 173 F.2d 179, 181 (3d Cir.1949); 11 Wright & Miller, Federal Practice and Procedure Sec. 2973, at pp. 655-56 (1973), the parties stipulated that the "bond was continued for the preliminary injunction." We shall therefore assume that the bond secures the Board against its damages from the preliminary injunction as well as from the temporary restraining order.
 
 
 5
 The premise of Coyne-Delany's civil rights suit against the Capital Development Board was that under Illinois law as expounded by the Illinois Appellate Court in Polyvend, Inc. v. Puckorius, 61 Ill.App.3d 163, 18 Ill.Dec. 524, 377 N.E.2d 1160 (1978), Coyne-Delany, as an indirect bidder on the plumbing contract for the Stateville cellhouse, had a property right of which it was deprived without due process of law by the Board's requiring Naal to use Sloan valves merely because the prison authorities had determined--unreasonably in Coyne-Delany's opinion--that Coyne-Delany's valves were defective. When he issued the preliminary injunction Judge Bua said that Coyne-Delany was likely to prevail on the merits, especially given the Board's refusal to submit the dispute over the quality of Coyne-Delany's valves to an impartial expert for binding determination, as Coyne-Delany had proposed. This court reversed the grant of the preliminary injunction, however. 616 F.2d 341 (1980) (per curiam). Noting that Polyvend had been reversed by the Illinois Supreme Court, 77 Ill.2d 287, 32 Ill.Dec. 872, 395 N.E.2d 1376 (1979), after Judge Bua had granted the preliminary injunction to Coyne-Delany, we held that under Illinois law a bidder, and a fortiori an indirect bidder, has no property right in being allowed to bid on a public contract and that Coyne-Delany therefore had no claim against the Board under the Fourteenth Amendment. 616 F.2d at 343.
 
 
 6
 Our decision came down on February 22, 1980, and a few days later the Board at last opened the bids that had been submitted back in May 1979. Naal was the low bidder, with a bid of $214,000, but its bid had lapsed because of the passage of time, and the Board had to solicit new bids. The new bids were opened on May 9, 1980. Although Naal's new bid, $270,000, was higher than its old bid had been, Naal was again the low bidder and was awarded the contract.
 
 
 7
 The Board then joined Hanover Insurance Company, the surety on the injunction bond, as an additional defendant in Coyne-Delany's civil rights suit, pursuant to Rule 65.1 of the Federal Rules of Civil Procedure, and moved the district court to award the Board damages of $56,000 for the wrongfully issued preliminary injunction and statutory costs (filing fees and the like, see 28 U.S.C. Sec. 1920) of $523 which the Board had incurred in the district court. Judge Bua refused to award either costs or damages. His opinion states, "the Court must weigh the equitable factors of the case, including whether the case was filed in good faith or is frivolous.... [T]he parties have stipulated that the case was filed in good faith and without malice. Further, it is apparent that the case was not frivolous. The law as it existed at the time the case was filed clearly favored the plaintiffs. It would be unreasonable to require a party to anticipate a change in the law and would be unconscionable to label a suit filed in good faith as frivolous where there is such a subsequent change."
 
 
 8
 There is no dispute over the amount of costs claimed by the Board; and while Coyne-Delany has not conceded that the Board incurred damages of $56,000 as a result of the delay of the project and the district court made no finding with respect to those damages, they undoubtedly exceeded $5,000, the amount of the injunction bond. True, 1979 and 1980 were years of rampant inflation; and to the extent that Naal's second bid was higher because of inflation the Board may not have been harmed--it had to pay more, but in cheaper dollars. (Another way of putting this is that the state had the use of $214,000 for an extra year at the high interest rates that prevail in times of inflation.) But the inflation between May 1979 and May 1980 was 14 percent (computed from Economic Report of the President 289 (Jan. 1981) (tab. B-50)), while Naal's second bid was 25 percent higher than its first. The specifications for the second round of bids were apparently the same as those for the first round. The Board must therefore have lost much more than $5,000 on the difference in the bids alone. And it may well have incurred other costs from the delay of the project by a year.
 
 
 9
 Although the district court has unquestioned power in an appropriate case not to award costs to the prevailing party and not to award damages on an injunction bond even though the grant of the injunction was reversed, the district court's opinion suggests that the court may have believed it had to deny both costs and damages because the lawsuit had not been brought in bad faith and was not frivolous. This would be the proper standard if the question were whether to award a prevailing defendant his attorney's fees (we disregard, since the Board has not requested an award of attorney's fees, the provision in 42 U.S.C. Sec. 1988 for awarding fees to prevailing parties in civil rights cases). In the absence of statute, an award of attorney's fees is proper only where the losing party has been guilty of bad faith, as by bringing a frivolous suit--frivolousness connoting not just a lack of merit but so great a lack as to suggest that the suit must have been brought to harass rather than to win. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); Overnite Transport. Co. v. Chicago Industrial Tire Co., 697 F.2d 789, 795 (7th Cir.1983); Mary v. Ramsden, 635 F.2d 590, 603 (7th Cir.1980); Perichak v. International Union of Electrical Radio & Machine Workers, 715 F.2d 78 at 83, 85 (3d Cir.1983).
 
 
 10
 The rule is different for costs. Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs ...." This language creates a presumption in favor of awarding costs. Delta Air Lines, Inc. v. Colbert, 692 F.2d 489, 490 (7th Cir.1982) ("where Rule 54(d) applies, the prevailing party is prima facie entitled to costs and the losing party must overcome that presumption"); Gardner v. Southern Ry. Systems, 675 F.2d 949, 954 (7th Cir.1982). The district judge can decline to award them but not just because an award of attorney's fees would not have been warranted--that is, not just because the losing party was acting in good faith. Id. at 954; Popeil Bros., Inc. v. Schick Elec., Inc., 516 F.2d 772, 776 (7th Cir.1975). "The losing party's good faith and proper conduct of the litigation is not enough ...." Delta Air Lines, Inc. v. Colbert, supra, 692 F.2d at 490.
 
 
 11
 The language of Rule 65(c), governing damages on an injunction bond, is only a little less clear than that of Rule 54(d): "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The court is not told in so many words to order the applicant to pay the wrongfully enjoined party's damages. But it is told to require a bond or equivalent security in order to ensure that the plaintiff will be able to pay all or at least some of the damages that the defendant incurs from the preliminary injunction if it turns out to have been wrongfully issued. The draftsmen must have intended that when such damages were incurred the plaintiff or his surety, pursuant to Rule 65.1's summary procedure, which despite its wording is applicable to the principal as well as the surety on the bond, see 7 Moore's Federal Practice p 65.1.05 (2d ed. 1982), would normally be required to pay the damages, at least up to the limit of the bond.
 
 
 12
 Yet some courts treat the district court's discretion to award or deny damages under an injunction bond as completely open-ended unless the plaintiff acted in bad faith in seeking the preliminary injunction. The principal cases, Page Communications Engineers, Inc. v. Froehlke, 475 F.2d 994 (D.C.Cir.1973) (per curiam), and H & R Block, Inc. v. McCaslin, 541 F.2d 1098 (5th Cir.1976) (per curiam), rely on Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060 (1882), where the Supreme Court stated that "in the absence of an imperative statute to the contrary, the court should have the power to mitigate the terms imposed [in granting the injunction], or to relieve from them altogether, whenever in the course of the proceedings it appears that it would be inequitable or oppressive to continue them." Id. at 441-42. Although the statement partakes of dictum because the injunction had not been dissolved completely, see id. at 446-47, a more important point is the absence, at the time the case was decided, of any statute or rule of court dealing with security for federal court injunctions. The Court discussed state statutes and rules, precursors of Rule 65(c), requiring injunction bonds, see 105 U.S. at 440-41, and only then stated that because of the absence of a federal statute or rule the federal courts "must still be governed in the matter by the general principles and usages of equity." Id. at 441 (emphasis added). The implication is that a rule requiring an injunction bond would have changed the Court's result--would have been the "imperative statute" to which it referred.
 
 
 13
 Page and H & R Block do not consider this reading of Russell or cite Houghton v. Cortelyou, 208 U.S. 149, 160, 28 S.Ct. 234, 237, 52 L.Ed. 432 (1908), where the Court narrowed the discretion that Russell had given district courts to relieve from liability under an injunction bond. See also Public Service Comm'n v. Brashear Freight Lines, Inc., 312 U.S. 621, 630, 61 S.Ct. 784, 789, 85 L.Ed. 1083 (1941). And they dismiss Rule 65(c)'s requirement of a bond or other security by pointing out that the district court can require a bond of nominal amount in appropriate cases, for example if the plaintiff is indigent. But it is one thing to say that the requirement of a bond can in effect be waived when there is a good reason for doing so, see 11 Wright & Miller, Federal Practice and Procedure Sec. 2954, at pp. 528-31 (1973)--a dispensation narrowly construed in this circuit, see Reinders Bros., Inc. v. Rain Bird Eastern Sales Corp., 627 F.2d 44, 54 (7th Cir.1980) ("absent extraordinary circumstances, the court errs in not granting [the demand for an injunction bond]")--and another to say that where a substantial bond is clearly required by the equities of the case the district court nevertheless has carte blanche to excuse the plaintiff from paying any damages on the bond.
 
 
 14
 Most cases hold, contrary to Page and H & R Block, that a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case. See, e.g., Atomic Oil Co. v. Bardahl Oil Co., 419 F.2d 1097, 1100-03 (10th Cir.1969); Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 241 n. 4, 243 (8th Cir.1970); Adolph Coors Co. v. A & S Wholesalers, Inc., 561 F.2d 807, 814 (10th Cir.1977); 7 Moore's Federal Practice, supra, p 6.10, at p. 65-100; Comment, The Triggering of Liability on Injunction Bonds, 52 N.C.L.Rev. 1252, 1257-63 (1974). We agree with the majority approach. Not only is it implied by the text of Rule 65(c) but it makes the law more predictable and discourages the seeking of preliminary injunctions on flimsy (though not necessarily frivolous) grounds.
 
 
 15
 When rules prescribe a course of action as the norm but allow the district court to deviate from it, the court's discretion is more limited than it would be if the rules were nondirective. Rules 54(d) and 65(c) establish what Judge Friendly recently called "a principle of preference" guiding the exercise of the district judge's discretion. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 768 (1982). The judge must have a good reason for departing from such a principle in a particular case. It is not a sufficient reason for denying costs or damages on an injunction bond that the suit had as in this case been brought in good faith. That would be sufficient only if the presumption were against rather than in favor of awarding costs and damages on the bond to the prevailing party, as it would be if the issue were attorney's fees under the American rule, which in the absence of bad faith leaves each party to bear his own attorney's fees. The award of damages on the bond is not punitive but compensatory.
 
 
 16
 A good reason for not awarding such damages would be that the defendant had failed to mitigate damages. The district court made no reference to any such failure in this case and we can find no evidence that there was any; the Board's requesting and obtaining a 30-day extension of time for filing its appeal brief, the factor stressed by Coyne-Delany, did not create material or unreasonable delay. A good reason not for denying but for awarding damages in this case, unmentioned by the district court, was that the bond covered only a small fraction of the defendant's damages. The Board asked for and should have been granted a much larger bond; and when the heavy damages that the Board had predicted in asking for the larger bond materialized, it had a strong equitable claim to recover its damages up to the limit of the bond. Nor could $5,000 be regarded as excessive because the plaintiff was a poor person. Cf. 11 Wright & Miller, supra, Sec. 2954, at p. 528. The plaintiff is not a poor person but a substantial corporation that will not be crushed by having to pay $5,523 in damages and costs. It is particularly difficult in the circumstances of this case to understand the judge's refusal to award any damages, or the trivial amount of costs, conceded to be reasonable in amount, asked by the defendant.
 
 
 17
 In deciding whether to withhold costs or injunction damages, not only is the district court to be guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding them, but the ingredients of a proper decision are objective factors--such as the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit--accessible to the judgment of a reviewing court. In the spectrum of decisions embraced by the overly broad and unfortunately named "abuse of discretion" standard (on which see Judge Friendly's recent article, supra ), the decision to deny costs and injunction damages is near the end that merges into the standard of simple error used in reviewing decisions of questions of law.
 
 
 18
 Although the district court's decision cannot stand, both because it applies an incorrect standard and because it fails to consider and evaluate the full range of factors (which might in an appropriate case include, but is not exhausted by, the plaintiff's good faith) that would be relevant under the proper standard, we are not prepared to hold that the Board is entitled as a matter of law to its costs and to its injunction damages up to the limit of the bond. The district court did allude to one factor, besides mere absence of bad faith, that supported its ruling--the change in the applicable law after the preliminary injunction was issued. The law on which the court had relied in issuing the injunction was contained in an intermediate state appellate court decision and of course such decisions are reversed with some frequency. We do not believe that a change in the law is always a good ground for denying costs and injunction damages to a prevailing party, but it is a legitimate consideration, perhaps especially where the prevailing party is a state agency that benefited from a change in the law of its state. In a sense, this is a case where one state agency (the Board) is seeking to benefit from the confusing signals sent out by another state agency (the court system)--though we do not mean to suggest that the Illinois Supreme Court was rushing fraternally to the aid of another state agency when it reversed Polyvend. In any event, a remand is necessary to allow Judge Bua to consider and weigh all the relevant factors identified in this opinion--bearing in mind the principle of preference that we have indicated should guide his equitable determination.
 
 
 19
 It remains to consider whether on remand the Board should be allowed to seek injunction damages above the limit of the bond. The surety cannot be required to pay more than the face amount of the bond, United States Steel Corp. v. United Mine Workers, 456 F.2d 483, 490 (3d Cir.1972), but it is a separate question whether the plaintiff can be. However, the Ninth Circuit has held in a scholarly opinion that the bond is the limit of the damages the defendant can obtain for a wrongful injunction, even from the plaintiff, provided the plaintiff was acting in good faith, which is not questioned here. Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-68 (9th Cir.1976). (Another exception might be where the plaintiff was seeking restitution rather than damages, as in Mitchell v. Riegel Textile, Inc., 259 F.2d 954 (D.C.Cir.1958).) The Supreme Court has cited Buddy Systems in dictum for the proposition that "a party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond." W.R. Grace & Co. v. Local Union 759, United Rubber Workers, --- U.S. ----, 103 S.Ct. 2177, 2185 n. 14, 76 L.Ed.2d 298 (1983). Although there was a bond in the present case, it states unequivocally: "The obligation of this bond is limited to $5,000.00." In asking for more, the Board is necessarily relying not on the bond but on some principle of equity that Grace says does not exist.
 
 
 20
 Rightly or wrongly, American common law, state and federal, does not attempt to make the winner of a lawsuit whole by making the loser reimburse the winner's full legal expenses, even when the winner is the defendant, who unlike a prevailing plaintiff does not have the consolation of a damage recovery. In noninjunctive suits, except those brought (or defended) in bad faith, the winner can recover only his statutory costs, invariably but a small fraction of his expenses of suit. It would be incongruous if a prevailing defendant could obtain the full, and potentially the staggering, consequential damages caused by a preliminary injunction. The preliminary injunction in this case halted work on a major construction project for a year; it could easily have been two or three years, and the expenses imposed on the defendant not $56,000 but $560,000. It might be a very great boon to the legal system of this country to discourage injunction suits by putting plaintiffs at such risk, but we do not see how such an approach can be squared with the general attitude toward litigation implied by the American rule on attorney's fees. Although that rule may soon have to be curtailed to cope with the flood of litigation in the state and federal courts today, we are not authorized to curtail it, in the face of the Supreme Court's position in Grace and especially in Alyeska Pipeline Service Co. v. Wilderness Society, supra, 421 U.S. at 271, 95 S.Ct. at 1628: "the rule followed in our courts with respect to attorneys' fees has survived. It is deeply rooted in our history and in congressional policy; and it is not for us to invade the legislature's province by redistributing litigation costs in the manner suggested by respondents...." A right to injunction damages potentially unlimited in amount would be in one sense a more extreme remedy against a losing litigant than allowing the winner to have his attorney's fees reimbursed. Not only would the amounts involved be much greater in some cases (though appropriately greater: the costs of the litigation would be greater to the defendant than if no injunction had been issued) but the burden of the rule would fall entirely on plaintiffs; the English and Continental rule, which requires the loser to reimburse the winner's attorney's fees, benefits prevailing plaintiffs as well as prevailing defendants. Of course, having to post a bond is also a deterrent just to plaintiffs. But if the plaintiff's damages are limited to the amount of the bond, at least he knows just what his exposure is when the bond is set by the district court. It is not unlimited. If the bond is too high he can drop the suit.
 
 
 21
 A defendant's inability to obtain damages in excess of the bond unless the plaintiff was acting in bad faith can have unfortunate results, which are well illustrated by this case where the district court required too small a bond. But a defendant dissatisfied with the amount of bond set by the district court can, on appeal from the preliminary injunction, ask the court of appeals to increase the bond, see Stockslager v. Carroll Elec. Cooperative Corp., 528 F.2d 949, 951 (8th Cir.1976), which the defendant here did not do. We may suggest without having to decide that a defendant who wanted the court of appeals to increase the bond would have to ask for accelerated consideration of his request in order to mitigate his damages and thus reduce the plaintiff's exposure. But these observations are immaterial to the question of the defendant's right to obtain damages up to the limit of the bond set by the district court.
 
 
 22
 Since Coyne-Delany is conceded to have brought this suit in good faith, the Board is not entitled to any damages above the $5,000 fixed in the bond. We therefore need not decide whether, if bad faith were shown, the Board could recover additional damages by way of motion under Rule 65 or would have to bring a separate action at law for malicious prosecution, as intimated in Commerce Tankers Corp. v. National Maritime Union, 553 F.2d 793, 800 (2d Cir.1977).
 
 
 23
 The Board's final argument is that because this is a civil rights case, it can use 42 U.S.C. Sec. 1988 to obtain its full damages, or at least prejudgment interest on the bond. The relevant part of section 1988 comes from section 3 of the Civil Rights Act of 1866, see Moor v. County of Alameda, 411 U.S. 693, 704-05, 93 S.Ct. 1785, 1793-94, 36 L.Ed.2d 596 (1973), and provides that federal jurisdiction in civil rights cases "shall be exercised and enforced in conformity with the laws of the United States," unless those laws are "deficient in the provisions necessary to furnish suitable remedies"; in that event the federal court can look to state law, which the Board contends would allow the relief it asks. But the statute must be referring to remedies for the plaintiff, not for the defendant. Cf. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969); Robertson v. Wegmann, 436 U.S. 584, 588-89, 98 S.Ct. 1991, 1994-95, 56 L.Ed.2d 554 (1978). There is no evidence that the framers of the Civil Rights Act of 1866 wanted to make it easier for defendants to recover injunction damages or other monetary relief from unsuccessful plaintiffs.
 
 
 24
 REVERSED AND REMANDED.
 
 
 
 *
 Hon. Edward Dumbauld of the Western District of Pennsylvania, sitting by designation