qad. inc., et al., Plaintiffs,

v.

**ALN ASSOCIATES, INC.,
et al., Defendants.**

No. 88 C 2246.

United States District Court,
N.D. Illinois, E.D.

Jan. 7, 1992.

Ernie L. Brooks, Thomas A. Lewry, Robert C. Brandenburg, Brooks & Kushman, Southfield, Mich., Jami E. Bay, Chicago, Ill., of counsel, for plaintiffs.

Robert E. Wagner, Alan L. Barry, Michael D. Lake, Joseph A. Fuchs, Wallenstein, Wagner & Hattis, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action was initially brought by qad. inc., Karl Lopker and Pam Lopker (collectively for convenience "qad"[1]) against ALN Associates, Inc., Sally Allen, Mike Allen and Ronald Whiteford (collectively for convenience "ALN"), claiming various breaches of contract, copyright infringement, misappropriation of trade secrets, unfair competition (under both federal and state law) and the making of false representations to qad.[2] ALN in turn launched

---

1. As in earlier opinions in the case, both this and the "ALN" label used to denote defendants collectively will be treated here as calling for singular verbs and pronouns, simply because the plural usage (though technically correct) would sound more awkward.

2. There have been a number of earlier opinions issued in the case, only one of which has given rise to the current motions and therefore to this opinion.

its own claims against qad. All of the claims stem from a basic dispute as to competing computer software distributed by the parties.

On July 3, 1991 this Court issued an opinion vacating the July 17, 1989 Preliminary Injunction Order (the "Order") that it had issued against ALN on copyright infringement grounds following an extended hearing conducted between April 6 and May 3, 1989 (the "Hearing").[3] qad, having lost the advantage that it had gained improperly through issuance of the Order, has since filed two motions seeking to undercut the Opinion materially or even to render it entirely toothless:

1. what qad labels as its "Motion for Summary Judgment that ALN Is Not Entitled to Damages as a Result of the Entry of the 1989 Preliminary Injunction" and

2. its motion "for confirmation of the scope of the Court's July 3, 1991 Opinion."

Both motions have now reached the fully-briefed stage. This opinion will deal with them in turn.

### ALN's Entitlement to Damages

Despite the label just quoted in the preceding paragraph, which would suggest that qad was focusing on ALN's inability to recover (or at least to establish) any damages flowing from what the Opinion had found to be a wrongfully-issued preliminary injunction, in principal part the original submission filed by qad in support of its motion devoted itself to urging that the Opinion was flat wrong. qad's arguments along those lines occupied fully three-fourths of its initial 14–page supporting memorandum. This Court therefore directed the parties orally, at the next status hearing in the case (held on October 15,

1991), to limit themselves to the damages issue.[4] On that score both parties point to the decision in Coyne–Delany Co. v. Capital Development Board of the State of Illinois, 717 F.2d 385 (7th Cir.1983) to support their respective positions (qad Mem. 11, 14; ALN Mem. 2–3; qad R.Mem. 3–4). Both sides cannot of course be right. And not surprisingly in light of the most recent history of this litigation, it turns out to be qad rather than ALN that has mischaracterized the facts and the law.

It is black letter law that the amount of a preliminary injunction bond normally sets the ceiling for damages obtainable by a party that is later found to have been wrongfully enjoined (Coyne–Delany, 717 F.2d at 394). But Coyne–Delany, id. at 393 also expressly recognizes that the ceiling is lifted where the other party had acted in bad faith in obtaining the preliminary injunction (see also the other Coyne–Delany references to the bad-faith exception, id. at 391 and at 394).

That latter exception to the ordinary rule, rather than the rule itself, clearly applies here. Opinion at 1266 n. 14 made it plain that the activities of qad's lawyer before the Copyright Office, although "highly suspect," were not to be the predicate for this Court's decision—so that footnote concluded by saying:

Thus qad's suggestion (P.Mem. 9) that its actions before the Copyright Office did not constitute "bad faith" is simply not relevant.

What this Court did decide was that qad's copyright misuse was "egregious" and that it involved "deception [that] has misled this Court into imposing unwarranted harm on ALN" (Opinion at 1267), that qad and its lawyers had "deliberately created" the "fog" that concealed the truth and had

---

3. This opinion will refer to that July 3, 1991 opinion, as it was later modified on July 17 to correct two inadvertent errors made in the course of its lengthy discussion, as the "Opinion." Citations to the Opinion, which has been reported at 770 F.Supp. 1261, will take the form "Opinion at —," referring to the F.Supp. page number but without repeating the volume number.

4. As with other aspects of the litigation, qad's initial treatment was also quite cavalier in ignoring the appropriate function and scope of motions for summary judgment and motions for reconsideration. This opinion will not pause to discuss those deficiencies, which would involve a detour from the proper focus of this opinion.

thus caused the wrongful issuance of the Order (*id.* at 1268), that "[u]sing its weapon of falsehood, qad pursued ALN in this Court—something that it could not have done without the advantage of its copyright" (*id.* at 1270), and "that its presentation at the Hearing was grounded in knowing falsehood" (*id.* at 1271).

Little wonder that the lawyer who is currently handling the matter for qad candidly acknowledged (July 1991 Tr. 6):

And we realize the bad faith and the other grounds that the cases supply would appear, at least at the threshold, to be found in the Court's opinion.

If there is any room left for doubt on the subject, it should be eliminated here and now. This Court so holds in express terms: qad *did* act in bad faith in obtaining the Order that improperly enjoined ALN.

What that leaves for decision, then, is the appropriate means to be employed for the determination of ALN's damages that it sustained by reason of the wrongfully issued Order. *Coyne–Delany*, 717 F.2d at 394 left open the question whether the proper route to that destination was a motion brought under Fed.R.Civ.P. ("Rule") 65 or the institution of a separate action of the malicious prosecution type (the latter path having been approved in *Commerce Tankers Corp. v. National Maritime Union*, 553 F.2d 793, 800 (2d Cir.1977)).

ALN does not now have such a separate action pending. Its Counterclaim Count III is captioned "Unfair Competition/Abuse of Process," and even though the prayer for relief in the Counterclaim asks for an "accounting" for damages sustained by ALN by reason of the claimed "abuse of process," the latter seems an odd label for qad's conduct now under discussion. Although ALN contends otherwise, this Court believes that it would be a stretch to read Count III as embracing the damages claim that this opinion has held to be viable.

■ But even if ALN were to amend its Count III so that it more directly tracked the elements of an Illinois malicious prosecution claim, that remedy would not appear to provide a totally comfortable fit to the situation here. For one thing, one essential element of a conventional malicious prosecution action is that the opponent's lawsuit must have been finally defeated on the merits, while here the only thing that qad has lost is the preliminary injunctive relief that it had originally obtained. Neither party has provided this Court with Illinois authority dealing with a comparable situation. Moreover, there may perhaps be other difficulties in characterizing the matter as a traditional malicious prosecution cause of action—but this opinion need not pause to analyze the matter further, given the conclusion announced in the next paragraph.

■ With no definitive directive available from our Court of Appeals, this Court considers it far preferable to opt for the Rule 65 alternative rather than to call for a separately-launched claim. With qad having been found by this Court to have abused the system by its bad faith pursuit and obtaining of a preliminary injunction, it seems more than reasonable to treat the enforcement of the consequences of that action—the award of any damages that were suffered by ALN as the injured party—as a remedy that comes within this Court's inherent power.[5]

In that respect, this Court draws a leaf from the recent decision in *Chambers v. NASCO, Inc.,* — U.S. —, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), where the Supreme Court looked to the inherent-power concept as the source of judicial power to impose

---

5. ALN Mem. 8–11 attempts to call upon the seemingly ubiquitous Rule 11 as an avenue for the relief it seeks. But quite apart from the doubtful availability of Rule 11 as a vehicle that allows the award of possibly enormous consequential damages (the Rule speaks only of an "appropriate sanction" for its violation, and this Court knows of no case law that has gone so far as to award "business expenses" rather than the commonly-awarded "but-for" attorneys' fees and expenses), qad R.Mem. 6 correctly identifies other reasons that teach the basic inapplicability of Rule 11 to deal with qad's conduct here. It is worth observing parenthetically, however, that the next-cited *Chambers* case expressly applied the inherent power doctrine even though Rule 11 did not fit the situation before the Supreme Court.

sanctions for a litigant's bad faith conduct.[6] There the approved sanction took the form of shifting the adversary's attorneys' fees to the offending party, notwithstanding both (1) the existence of the so-called "American Rule" that generally prohibits such fee-shifting and (2) the inapplicability of Rule 11 to the bulk of the offending conduct (because it did not consist of the filing of papers). Although the remedy that is contemplated for the bad-faith conduct involved here is compensatory (the payment of damages sustained by ALN) rather than punitive (the shifting of fees), that distinction would seem to cut in favor of—rather than against—the granting of that remedy in the exercise of this Court's inherent power to protect the integrity of the justice system. There is much in *Chambers* that could be quoted here in support of this Court's analysis and conclusion, but just two samples should suffice (111 S.Ct. at 2132, 2133 (numerous citations omitted)):

> Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. This "historic power of equity to set aside fraudulently begotten judgments," is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner ... involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.

\*　\*　\*　\*　\*　\*

> In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court or-

der." The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

This Court is therefore ready to "make ALN whole"—to proceed with the damages issues whenever the litigants are. It will await their early input on that score.

### Scope of the Opinion

On this second of qad's motions, each litigant accuses the other of conducting itself like the operator of a carnival shell game—of engaging in sleight of hand tactics to conceal from this Court under just which of the shells the pea of qad's copyright misuse is really located. Even worse, both of those accusations appear to have some force, though qad is clearly the worse offender (as explained later). Fortunately it is unnecessary, in this Court's view, to accept the litigants' invitations to play the shell game to its conclusion.

This Court did not deal with ALN's claim of qad's unclean hands in the Opinion. As Opinion at 1263 (footnotes omitted) characterized ALN's motion and this Court's ruling:

> ALN now moves under Rule 56 for summary judgment as to its affirmative defense to Count III, claiming that qad misused its copyright of MFG/PRO and that it should therefore be prevented from obtaining relief against ALN for copyright infringement. For the reasons stated in this memorandum opinion and order, ALN's motion is granted.

In reaching that decision, this Court held that qad's lawyer had led this Court down the garden path: Having obtained a copyright from the Copyright Office that labeled qad's work as original rather than as

---

**6.** Needless to say, with the *Chambers* decision having come down well after our Court of Appeals reserved decision on the question in *Coyne–Delany*, this Court is free to look to *Chambers* to inform its own current decision.

having been substantially copied and thus as substantially derivative (as it really was), counsel then proceeded to abuse the legal process by persuading this Court to protect against ALN's alleged copying of that work. Here is how Opinion at 1270 began its *Conclusion* section:

> qad began to misuse its copyright over MFG/PRO when it attempted to extend its rights over material over which it had no copyright: those portions of its software that it copied from HP250. Yet it did not reveal that fact to its adversary or to this Court. Using its weapon of falsehood, qad pursued ALN in this Court—something that it could not have done without the advantage of its copyright.

That decision made it unnecessary for this Court to resolve a number of other issues that the parties had disputed in the course of their submissions. As Opinion at 1271 (footnotes omitted) continued:

> Finally, it is again noted that this opinion involves no findings as to:
>
> 1. the validity of qad's copyright covering MFG/PRO, or
>
> 2. whether qad committed fraud before the Copyright Office, or
>
> 3. whether the HP250 copyright is valid, or
>
> 4. which parts of MFG/PRO are original and which are copied.

So much by way of background. Now to go on to the issues that are posed by qad's current motion for "confirmation" of the scope of the Opinion.

qad emphasizes the fact that the Opinion referred only to what the parties have termed qad's Version 1.2 of its MFG/PRO software (see Opinion at 1264 & n. 10). But although that is how the Opinion does read, qad's emphasis on that limited reference is entirely misleading. In fact the *analysis* in the Opinion generally addressed all of qad's original copyrights of

MFG/PRO and the overall status of qad's MFG/PRO program as a work that was derivative from Hewlett Packard's HP250—and ALN points out accurately that all of the evidence that was adduced at the Hearing actually related not to Version 1.2 but rather to a later version of MFG/PRO (Version 2.5).[7]

qad never disputes that in its Reply Brief. It acknowledges (indeed it insists, R.Mem. 3) that:

> Both the '813 and '814 copyrights registrations have been part of the case since day one. Both registrations were introduced at the 1989 hearings as Exhibits 1 and 2.

qad further acknowledges that the '813 registration, which it stresses was expressly at issue during the Hearing, *includes* the Version 2.5 programs (R.Mem. 4). But then it nevertheless continues to play its confusing numbers game by arguing (*id.*):

> Factually, the '501 registration[8] covers the Version 2.5 of MFG/Pro that was in ALN's possession when the lawsuit began.

Because that '501 copyright registration was added to qad's Complaint only after the completion of the Hearing and the issuance of the Order (obviously so, because the registration in 1990 postdated both the Hearing and the Order by several months), qad contends that it is still entitled to pursue its claim of infringement of that '501 copyright.

But qad does not (and cannot) quarrel with ALN's point that the program that was in dispute during the Hearing, and hence was the basis upon which qad improperly obtained its preliminary injunction Order, was in fact Version 2.5. To the extent that the Opinion did not make the proper reference (to Version 2.5 instead of Version 1.2 alone), that omission must be ascribed to the confusing nature of the

---

7. Indeed qad apparently does not even have a copy of Version 1.2 (which is covered by Copyright Registration TX 2–257–814), the version that is referred to in the Opinion.

8. [Footnote by this Court] That reference is to Copyright Registration TX 2–710–501, which

was effective January 19, 1990 but showed the creation of the copyrighted work as having been completed in 1987 and the first publication of that work as having taken place on July 27, 1987.

parties' submissions (as in baseball, you can't keep track of the players without a scorecard). But one thing is crystal clear: Certainly given the subject matter of the contested preliminary injunction Hearings, together with the fact that qad's misrepresentation as to the originality of its work that was covered by the '813 copyright registration also necessarily embraced Version 2.5 as part of the subject matter of that registration, the Opinion must also be read as encompassing Version 2.5 within its scope of unenforceability against ALN. And if the purpose of any claim that could be made by qad under the '501 registration would be to charge ALN with an infringement of Version 2.5 of MFG/PRO, the Opinion must be read as negating any such claim as well.

In summary, not only Version 1.2 but also Version 2.5 (in whatever copyright registrations it may be embodied) are unenforceable against ALN because of copyright misuse. On the other hand, as a matter of definition any other qad copyright registrations that were *not* the subject of its counsel's misrepresentations, and thus were *not* the subject of qad's invalid extension of any legitimate copyright protection to which it was entitled against claimed infringement by ALN, would not come within the reach of the Opinion's ruling. But those matters do not exhaust the universe—it is equally true that:

1. Also by definition, any version of qad's claimed copyrighted materials to which ALN did *not* have access before it generated its own software could not even arguably be the subject of an infringement claim.[9]

2. Any current effort that qad might make to obtain protection over any other materials over which it had no copyright (by reason of the fact that such materials were copied by it, rather than their being

original works as qad had represented to the Copyright Office) would also be doomed to fail under this Court's analysis as contained in the Opinion, to which this Court will of course continue to adhere.

### Conclusion

qad's mislabeled motion for a "summary judgment" that ALN is not entitled to damages as a result of the entry of the Order is denied for its lack of substantive merit. qad's other motion—for confirmation of the scope of the Opinion—has been granted by the discussion here, but *not* with the answers that qad would have liked. This Court sets January 21, 1992 at 8:45 a.m. for the next status hearing in this action, at which time counsel for the parties must be prepared to discuss further proceedings in light of this opinion.

---

9. ALN Mem. 3 says that was true of what qad calls its Version 4.0 registration. And that statement of non-access is confirmed by qad's response to ALN's General Rule ("GR") 12(*l*) (now 12(m)) statement filed in support of its motion that led to the Opinion—it expressly agreed to Paragraph 7 of ALN's GR 12(*l*) statement that such is the case. Yet although qad further acknowledges that the 1989 Order covered that Version 4.0 of the MFG/PRO software, it never owns up to its disentitlement to such protection on copyright infringement grounds, as it should. Finally, to the extent that the Opinion did not refer to that Version 4.0, it was again because qad's description of its copyright applications was unclear—and qad should not benefit from that lack of clarity either.