In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2215

Mead Johnson & Co.,

Plaintiff-Appellee,

v.

Abbott Laboratories,

Defendant-Appellant.


On Petition for Rehearing


Decided April 12, 2000


   Before Bauer, Easterbrook, and Kanne, Circuit Judges.

   Per Curiam.  Mead Johnson has filed a petition for
rehearing asking us to remand so that the
district court may increase the amount of the
injunction bond. A higher bond would produce a
higher potential award of damages for wrongful
injunction, because we have already held that the
district court should not have awarded
preliminary injunctive relief. According to Mead
Johnson, Coyne-Delany Co. v. Capital Development
Board, 717 F.2d 385, 394 (7th Cir. 1983), holds
that it is possible to increase the injunction
bond even after the injunction has been reversed.

   Coyne-Delany does not hold any such thing. None
of the parties to the case requested such a step.
What the panel in Coyne-Delany remarked is that
a litigant aggrieved by an insufficient
injunction bond may ask the court of appeals to
increase it. An increase could be beneficial to
the enjoined party if (a) the court of appeals
affirms the preliminary injunction, but a
possibility remains that permanent relief will be
denied; or (b) the preliminary injunction is
vacated for legal error, but the district court
remains free to afford new injunctive relief, the
situation in International Game Technology v. WMS
Gaming Inc., 1999 U.S. App. Lexis 22971 (Fed. Cir.
Sept. 3, 1999); or (c) the increase precedes
reversal of the preliminary injunction, and thus
affords the enjoined party additional damages for
harm suffered during the period between the

increase of the bond and the end of injunctive relief. Nothing in Coyne-Delany suggests that an injunction bond may be increased after the preliminary injunction has already been reversed and will not be replaced by another.

A bond is a condition to preliminary injunctive relief. Coyne-Delany holds, among other things, that, if the injunction is reversed, compensation for harm caused by the injunction cannot exceed the amount of the bond. 717 F.2d at 393-94. That conclusion would be vitiated if the district judge could increase the bond after the injunction had been set aside, for then the bond would not cabin the damages. We explained in Coyne-Delany that the bond requirement is an exception to the norm in American litigation that the parties bear their own costs and expenses. A prevailing party may recover up to the amount of the bond; beyond that, there is no basis for cost-shifting. To permit changes in the bond after an injunction's reversal would be to overturn the rule in fact, if not in name.

What is more, posting a bond is voluntary. "[I]f the plaintiff's damages [for persuading the court to issue a wrongful injunction] are limited to the amount of the bond, at least he knows just what his exposure is when the bond is set by the district court. It is not unlimited. If the bond is too high he can drop the suit." 717 F.2d at 394. If the bond can be increased after reversal, the plaintiff lacks the option to drop the suit in order to limit its exposure. Anyway, what would a post-reversal bond secure? If the plaintiff is entitled to balk and walk away, as Coyne-Delany says (and Fed. R. Civ. P. 65(c) contemplates), then an order to increase the bond would be ineffectual. An injunction bond is a condition of a preliminary injunction. Once the injunction has been reversed, the bond no longer serves a function other than securing payment of the prevailing party's damages. As we held in Coyne-Delany, these damages cannot exceed the amount of the bond that was in effect while the injunction lasted. Thus there is neither logical nor legal room for a post-reversal increase in an injunction bond. See Thomas & Betts Corp. v. Panduit Corp., 65 F.3d 654, 664 n.13 (7th Cir. 1995).

Abbott Laboratories also has filed a petition for rehearing. In response to that petition, the panel amends its opinion by replacing the paragraph at slip op. 7-8 (201 F.3d 883, 886-87) with this language:

Section 43(a)(1) forbids misleading as well as false claims, but interpreting "misleading" to include factual propositions that are

susceptible to misunderstanding would make consumers as a whole worse off by suppressing truthful statements that will help many of them find superior products. A statement is misleading when, although literally true, it implies something that is false. Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 13 (7th Cir. 1992). "Misleading" is not a synonym for "misunderstood," and this record does not support a conclusion that Abbott's statements implied falsehoods about Similac. Reducing ads and packaging to meaningless puffery can't be the objective of the Lanham Act--though it is a logical (and likely) outcome of Mead Johnson's approach, given the normal level of confusion and misunderstanding reflected in consumer surveys. Asked at oral argument whether a seller of aspirin could label that drug as an anti-inflammatory useful for arthritis (a medically established property of aspirin) if a survey showed that consumers confused palliation of symptoms with a cure for the disease, counsel for Mead Johnson replied that the claim of anti-inflammatory properties would be misleading for the same reason "1st Choice of Doctors" is misleading. This consequence of Mead Johnson's view is so counterproductive that the basic position cannot be accepted. We are not comforted by Mead Johnson's assurance that a seller could overcome consumer misunderstanding and make the claim about anti-inflammatory (or anticavity) benefits if it delivered additional details about the nature and extent of these effects. Requirements along the lines of a package insert with medical details are the province of regulations issued by the Food and Drug Administration, not of litigation under the Lanham Act. What is more, adding details could be so costly and burdensome that sellers might choose to omit all of the information. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 389-90 (1992); cf. Todd v. Societe BIC, S.A., 9 F.3d 1216, 1218-19 (7th Cir. 1993) (en banc) (observing that compendious advice is not always more useful to consumers). Anyway, if consumers did not read (or understand) the medical details they would be none the wiser, and on Mead Johnson's view the claim should be enjoined anyway.

None of this calls into question the understanding, expressed by many decisions, that whether a claim is either "false" or "misleading" is an issue of fact rather than law. See Abbott Laboratories v. Mead Johnson & Co., 971 F.2d at 13-15; Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943-45 (3d Cir. 1993); Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham

Corp., 960 F.2d 294, 298 (2d Cir. 1992). Our fundamental conclusion is that a producer cannot make a factual issue just by conducting surveys about how science is done (or, worse, about how surveys should be conducted). The sort of survey evidence Mead Johnson gathered would not support a conclusion by a reasonable person that Abbott's claim either was false or implied a falsehood.

All members of the panel have voted to deny Mead Johnson's petition for rehearing. No judge has called for a vote on Abbott Laboratories' petition for rehearing en banc, which is denied, as is Abbott's petition for rehearing.