

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2003

# Sprint Comm Co v. Cat Comm Intl Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-2209

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

### Recommended Citation

"Sprint Comm Co v. Cat Comm Intl Inc" (2003). *2003 Decisions.* Paper 328.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/328

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 11, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2209

SPRINT COMMUNICATIONS COMPANY L.P.,
Appellant

v.

CAT COMMUNICATIONS INTERNATIONAL, INC.

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 00-cv-01491
(Honorable Katharine S. Hayden)

Argued April 22, 2003

Before: SCIRICA, *Chief Judge,** AMBRO and WEIS,
*Circuit Judges*

(Filed: July 11, 2003)

---

* Judge Scirica began his term as Chief Judge on May 4, 2003.

BRANT M. LAUE, ESQUIRE
 (ARGUED)
Armstrong Teasdale
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108

Attorney for Appellant

HUGH P. FRANCIS, ESQUIRE
 (ARGUED)
Francis & O'Farrell
310 South Street
Morristown, New Jersey 07960

Attorney for Appellee

---

**OPINION OF THE COURT**

---

SCIRICA, *Chief Judge.*

The principal issue on appeal is whether the District Court erred by retroactively increasing the amount of an injunction bond upon dissolution of a preliminary injunction.

## I.

### A.

Sprint Communications Company L.P. is a provider of long distance telephone service. CAT Communications International, Inc. is a reseller of local telephone service. The underlying dispute here arises from the allegedly improper use of Sprint's services by CAT Communications's customers.

Telephone users typically receive their local telephone service from a Local Exchange Carrier, which operates in a geographically defined exchange area. CAT Communications is a Competitive Local Exchange Carrier that leases lines from other Local Exchange Carriers and sells local telephone service available on these lines to the

public on a prepaid basis. CAT Communications has no telephone facilities of its own.

As a long distance carrier, Sprint carries long distance calls forwarded to it by Local Exchange Carriers. In order to bill the long distance callers using its services, Sprint usually receives billing name and address information from the Local Exchange Carriers. As an alternative, the Local Exchange Carriers may provide billing and collecting services on behalf of Sprint.

Sprint contends that its network received unauthorized long distance telephone calls from CAT Communications's local service customers. The calls originated from several states, the largest number coming from New Jersey. None of these calls were paid for.

## B.

Sprint asked CAT Communications to prevent its customers from gaining access to Sprint's network and also to provide a billing mechanism or billing information to facilitate Sprint's collection efforts. When CAT Communications did not respond, Sprint filed suit in federal court alleging trespass, conversion, nuisance, unjust enrichment, civil conspiracy, common law fraud, and violation of the Federal Communications Act, 47 U.S.C. § 151 *et seq.* Sprint also requested preliminary injunctive relief.

In May 2000, the District Court heard arguments on Sprint's request for a preliminary injunction to prevent the unauthorized and unpaid use of its network. Sprint wanted CAT Communications to restrict its customers' access to Sprint's long distance network. CAT Communications argued that the expense of instituting the restriction should foreclose issuing a preliminary injunction. Because CAT Communications provided "[n]o affidavits or similar proofs" supporting its argument, the District Court found that the cost to CAT Communications of such restriction was at that point "mere conjecture." *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, No. 00-1491, 2000 U.S. Dist. LEXIS 22404, at *13 (D.N.J. May 15, 2000). Moreover, the District Court held the possible cost of the restriction

would not be "significant when compared to the harm sustained by Sprint." *Id.* At the time, Sprint had shown "a total of \$178,000 in unpaid long distance phone bills" attributed to the unauthorized use of its network by CAT Communications's customers. *Id.* at *11.

The District Court issued an order preliminarily restraining CAT Communications "from permitting [its] customers to access or place calls on . . . Sprint's . . . long distance network" and directing it to "take such measures as are necessary to block all [its] customers'" access. *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, No. 00-1491, at 1-2 (D.N.J. May 15, 2000) (order). The injunction order required Sprint to post a \$250,000 bond "for payment of such costs and damages as may be incurred or suffered by . . . CAT Communications if found to have been wrongfully enjoined." *Id.* at 2.

Soon after the order was issued, CAT Communications moved to modify the preliminary injunction. But it withdrew the motion after the District Court amended the injunction order.[1] CAT Communications appealed the preliminary injunction but then withdrew its appeal.

## C.

CAT Communications complied with the preliminary injunction by ordering blocks on its customers' access to Sprint's network. The blocks were actually instituted by the Local Exchange Carriers that own the local lines, not by CAT Communications, a reseller of local service that does not have its own telephone facilities. In some areas, the Local Exchange Carriers charged fees to CAT Communications in order to institute and maintain the blocks. Particularly, in New Jersey, Verizon charged a non-recurring \$10.55 fee to impose a block on each CAT

---

1. The original order required CAT Communications to prevent all its customers' access to Sprint's network. The order was amended to require CAT Communications to prevent access by "persons who become CAT Communications' customers after May 15, 2000," the date the preliminary injunction was granted. *Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, No. 00-1491, at 2 (D.N.J. June 16, 2000) (order).

Communications customer and a $12.41 per line monthly charge to maintain the block. With these charges, CAT Communications began to accrue significant costs under the preliminary injunction.[2]

But CAT Communications took no action until November 2001, when it sought to terminate the preliminary injunction and increase the amount of the injunction bond. At that time, CAT Communications asserted that the blocking charges stood at over $2.7 million and were projected to rise. In January 2002, Sprint and CAT Communications filed motions for summary judgment. The original District Judge had by then retired and a hearing on these motions was set for April 2002 before a new District Judge.

The District Court granted summary judgment to CAT Communications on Sprint's nuisance, unjust enrichment, civil conspiracy, common law fraud, and Federal Communications Act claims, but denied summary judgment on the trespass and conversion claims. The District Court denied Sprint's motion for summary judgment on its trespass and conversion claims. It also dissolved the preliminary injunction and, at the same time, increased the injunction bond to $4.95 million. The increase in the bond amount was based on the "accrued" blocking fees charged to CAT Communications.

Sprint appeals the dissolution of the preliminary injunction and the simultaneous increase in the amount of the injunction bond.[3] Because our focus is on the latter issue, we address the bond increase first.

---

2. CAT Communications filed a verified petition with the New Jersey Board of Public Utilities seeking relief from Verizon's blocking charges. Although charges continued to accrue after the filing, CAT Communications apparently has not yet paid anything to Verizon.

3. We have jurisdiction under 28 U.S.C. § 1292(a)(1), which provides "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . modifying . . . or dissolving injunctions, . . . except where a direct review may be had in the Supreme Court."

## II.

We normally review district court judgments fixing the amount of an injunction bond for abuse of discretion. *See, e.g., United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 745 (8th Cir. 2002) ("We review the amount of the [injunction] bond for an abuse of discretion."). But here it is a question of law whether a district court may retroactively increase a bond amount, after the bond has been posted, in order to cover the asserted costs and damages incurred by the enjoined party. On this matter, we exercise plenary review. *See, e.g., S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (stating that, in appeals from preliminary injunctions, questions of law are reviewed de novo).

Generally, a bond is a condition of preliminary injunctive relief. Fed. R. Civ. P. 65(c) requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined."[4] Thus, the injunction bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989) (quotations omitted).

The injunction bond also serves other functions. "It is generally settled that, with rare exceptions, a [party] wrongfully enjoined has recourse only against the bond." *Id.*; *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 n.31 (3d Cir. 1990) (Applicants "derive some protection from the bond requirement, for [enjoined parties] injured by wrongfully issued preliminary injunctions can recover only against the bond itself."). Thus, the bond generally limits the liability of the applicant and informs the applicant of "the price [it] can expect to pay if the

---

4. We have held that, under limited circumstances, a district court need not require a bond as a condition of preliminary injunctive relief. *See Temple Univ. v. White*, 941 F.2d 201 (3d Cir. 1991). *Cf. Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988) ("While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory.").

injunction was wrongfully issued." *Instant Air Freight*, 882 F.2d at 805; *see also id.* at 805 n.9 ("The bond can thus be seen as a contract in which the court and [the applicant] 'agree' to the bond amount as the 'price' of a wrongful injunction.") (quotations omitted).[5]

The functions of the bond are illustrated in the course of litigation involving preliminary injunctive relief. When a court grants an applicant's request for a preliminary injunction, it will generally condition this grant on the applicant's posting a bond. The applicant then decides whether to accept the preliminary relief by posting the bond or to withdraw its request. The applicant may base its decision on whether it wants to expose itself to liability up

---

5. The United States Court of Appeals for the Fifth Circuit has provided a succinct and informative explanation of the functions of the injunction bond:

> (1) it assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured, and (2) it provides the plaintiff with notice of the maximum extent of its potential liability, since the amount of the bond "is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith." The bond can thus be viewed as a contract in which the court and plaintiff "agree" to the bond amount as the "price" of a wrongful injunction.

*The Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) (footnotes omitted).

Other courts and commentators have also explained that the injunction bond serves not only to compensate a wrongfully enjoined party, but generally to limit the applicant's liability and inform the applicant of the price of a wrongful injunction. *See, e.g.*, *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) (The applicant "consents to liability up to the amount of the bond, as the price" of a wrongful injunction.) (quotations omitted); *Buddy Sys., Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1168 (9th Cir. 1976) ("If [an injunction] bond is posted, liability is limited by the terms of the bond or the order of the court that required the posting."); 13 James Wm. Moore et al., Moore's Federal Practice § 65.50[2] (3d ed. 2003) ("The sum posted in [an injunction] bond is [generally] determinative of the limit that may be recovered by a wrongfully restrained party . . . .").

to the bond amount. If the preliminary injunction takes effect and it is later determined a party was wrongfully enjoined, that party may then seek recovery against the posted bond. The recovery generally cannot exceed the amount posted.

If a retroactive increase is permissible, the injunction bond is no longer cabined; the bond no longer fixes exposure nor caps liability. A retroactive increase subjects the successful applicant to an unexpected and unanticipated liability.

Here, Sprint went forward with the preliminary injunction believing its liability was capped at $250,000 if CAT Communications were wrongfully enjoined. But the retroactive bond increase subjects Sprint to the possibility that CAT Communications may recover $4.95 million in costs and damages. Because the bond limits liability at the amount posted when the applicant accepted the preliminary injunction, the District Court erred in ordering a retroactive increase.

Rejecting a retroactive increase in the bond amount upon dissolution of a preliminary injunction accords with a recent decision by the United States Court of Appeals for the Seventh Circuit. *See Mead Johnson & Co. v. Abbott Labs.*, 209 F.3d 1032 (7th Cir. 2000). After appellate reversal of a preliminary injunction, the defendant on a petition for rehearing asked for a remand so that the district court might increase the amount of the injunction bond. In addressing the petition for rehearing, the court of appeals held that "there is neither logical nor legal room for a[n] . . . increase in an injunction bond" after the preliminary injunction has been reversed. *Id.* at 1034. The court explained that, if post-reversal increases were allowed, applicants would not know their exposure when deciding whether to accept preliminary relief. The bond's role in limiting the applicant's liability "would be vitiated if the district judge could increase the bond after the injunction had been set aside, for then the bond would not cabin the damages." *Id.* at 1033; *see also id.* ("A prevailing party may recover up to the amount of the [injunction] bond . . . .").

A retroactive increase in the amount of an injunction bond on dissolution or reversal is generally improper. The injunction bond should maintain the limit on the applicant's liability and allow the applicant to "know[ ] just what [its] exposure is when the bond is set by the district court." *Id.* (quotations omitted).[6]

## III.

"[T]he law has entrusted the power to . . . dissolve [a preliminary] injunction to the discretion of the trial court in the first instance, and not to the appellate court . . . ." *Glasco v. Hills*, 558 F.2d 179, 180 (3d Cir. 1977). This deference to the district court reflects the need for flexibility by the trial court in making determinations "almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir. 1970). Thus, we review the decision to dissolve the preliminary injunction for abuse of discretion. *See, e.g., qad. inc. v. ALN Assocs., Inc.*, 974 F.2d 834, 837 (7th Cir. 1992).[7]

At the same time, a district court must adhere to certain standards. In particular, "[t]he standard that the district

6. In rejecting the bond increase and maintaining the limit on Sprint's potential liability, our holding caps the amount of CAT Communications' possible recovery at a level which may be below the costs it has incurred. But CAT Communications had ample opportunity to address its potential damages from a wrongful injunction before the preliminary injunction was issued. Furthermore, while CAT Communications moved for modification and filed an appeal soon after the order was issued, it voluntarily withdrew these challenges to the preliminary injunction. It was not until almost eighteen months after the preliminary injunction was granted, after it had allegedly accrued over $2.7 million in blocking fees, that CAT Communications initiated a sustained challenge to the amount of the injunction bond.

7. We note that while a district court's ultimate decision to dissolve a preliminary injunction is reviewed for abuse of discretion, the underlying findings of fact are reviewed for clear error and legal conclusions are reviewed de novo. *E.g., qad. inc.*, 974 F.2d at 837.

court must apply when considering a motion to dissolve an injunction is whether the movant has made a showing that changed circumstances warrant the discontinuation of the order." *Township of Franklin Sewerage Auth. v. Middlesex County Utils. Auth.*, 787 F.2d 117, 121 (3d Cir. 1986). The need for changed circumstances prevents an enjoined party from constantly challenging the imposition of a preliminary injunction and relitigating arguments on motions to dissolve that have already been considered by the district court in its initial decision.[8] In addressing the District Court's judgment here, we take into account the need both to allow flexibility in preliminary injunction orders and to forestall unwarranted attempts to alter these orders.

Sprint contends there are no changed circumstances to justify the dissolution of the preliminary injunction. Although not entirely clear, it appears from its oral opinion that, almost two years after the preliminary injunction was issued, the District Court came to a different conclusion from the original judge on the likelihood of success on the merits and the proper weighing of competing interests and harms. On this record, it appears that the "changed circumstances" here consisted mainly of the increase in costs of compliance asserted by CAT Communications. *See Sprint Communications Co. L.P. v. CAT Communications Int'l, Inc.*, No. 00-1491, at 102 (D.N.J. Apr. 1, 2002) (transcript of oral opinion) ("More powerful than anything else in terms of considering the continuation of injunctive relief is the [original judge's] conclusion correct when made but now

---

8. Similarly, changed circumstances are also required to modify a preliminary injunction. As we explained:

> Certainly, absent some change in circumstances, a movant ought not to be able to file a motion . . . pertaining to the modification of an injunction . . . and relitigate the "original issue" simply because the case involves preliminary injunctive relief. Modification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable.

*Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993) (quotations and citation omitted).

proven wrong that 'CAT will suffer minimal harm if it is required to block its customers' unauthorized access to Sprint's fiber optic network.'") (quoting *Sprint Communications*, 2000 U.S. Dist. LEXIS 22404, at *13).

Nonetheless, two years is a long time for a preliminary injunction. Given our deferential standard of review and the flexible nature of injunctive relief, we must affirm the District Court's judgment of dissolution. The District Court apparently found that over the course of time the circumstances were such that the preliminary injunction proved unwarranted. In so doing, the District Court did not abuse its discretion.[9]

We recognize that matters addressed by preliminary injunctive relief change over time. If at the present time Sprint believes it needs a preliminary injunction, it may seek such equitable relief before the District Court, subject to its willingness to post a bond in the appropriate amount. The District Court can decide whether a preliminary injunction should issue and, if so, the proper amount of an injunction bond to cover the costs and damages of such an injunction going forward.

---

9. In affirming the dissolution of the preliminary injunction, we do not mean to suggest that the injunction was improvidently granted by the original judge. As even CAT Communications concedes in its brief, "[w]here, as here, a preliminary injunction is set aside by the district court, that decision does not constitute a determination that" the court erred in making the initial order. In fact, it appears that, given the record before him, the original judge did not abuse his discretion in granting the preliminary relief.

But the ultimate determination whether a party was wrongfully enjoined and can recover on the injunction bond generally must wait until "after a trial and final judgment on the merits." *Clark v. K-Mart Corp.*, 979 F.2d 965, 969 (3d Cir. 1992) (en banc). As explained by the United States Court of Appeals for the Second Circuit, "The conclusion that [a preliminary] injunction later dissolved was 'wrongful,' in the sense that the party had the right to do the enjoined act, does not necessarily [mean] that the district court abused its discretion in granting the relief in the first place." *Blumenthal*, 910 F.2d at 1054.

12

## IV.

For these reasons, we will reverse the increase in the amount of the injunction bond and order that the amount of the bond be maintained at $250,000. We will also affirm the dissolution of the preliminary injunction.

A True Copy:
Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*