UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LANGUAGE LINE SERVICES, INC., a Delaware corporation, | No. 11-17757 |
| Plaintiff-Appellee, | DC No. 5:10-cv-02605-JW |
| v. | ORDER GRANTING APPELLANT'S MOTION FOR CLARIFICATION AND AMENDING THE MEMORANDUM DISPOSITION |
| LANGUAGE SERVICES ASSOCIATES, INC., a Pennsylvania corporation, | |
| Defendant-Appellant, | |
| and | |
| WILLIAM SCHWARTZ; PATRICK CURTIN, individuals, | |
| Defendants, | |
| v. | |
| BRYAN LUCAS, | |
| Third-party-defendant-Appellee. | |

Before:     CALLAHAN and WATFORD, Circuit Judges, and SINGLETON,[*] Senior District Judge.

Language Services Associates' Motion for Clarification at Docket No.

37 is **GRANTED.**

---

[*]     The Honorable James K. Singleton, Jr., Senior United States District Judge for the District of Alaska, sitting by designation.

The Memorandum Disposition filed on September 24, 2012, is amended as follows:  On page 2, footnote 2, which reads, "The notice of appeal states that LSA also appealed Discovery Order No. 7 (order finding LSA in contempt), but LSA's opening brief did not address the contempt finding.  LSA therefore waived the contempt finding, and we do not address that issue.  *Dream Games of Ariz. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009)," is deleted from the Memorandum Disposition in its entirety.

An Amended Memorandum Disposition will be filed concurrently with this Order.

No petitions for rehearing, rehearing en banc, or rehearing before the full court are pending.  No subsequent petitions for rehearing, rehearing en banc, or rehearing before the full court may be filed.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LANGUAGE LINE SERVICES, INC., a Delaware corporation, | No. 11-17757 |
| Plaintiff-Appellee, | DC No. 5:10-cv-02605-JW |
| v. | **AMENDED** MEMORANDUM* |
| LANGUAGE SERVICES ASSOCIATES, INC., a Pennsylvania corporation, | |
| Defendant-Appellant, | |
| and | |
| WILLIAM SCHWARTZ; PATRICK CURTIN, individuals, | |
| Defendants, | |
| v. | |
| BRYAN LUCAS, | |
| Third-party-defendant-Appellee. | |

Appeal from United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted August 10, 2012
San Francisco, California

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before:    CALLAHAN and WATFORD, Circuit Judges, and SINGLETON,** Senior District Judge

This trade secrets litigation involves a dispute between two competitors, Language Services Associates ("LSA") and Language Line Services ("Language Line").[1] LSA appeals the district court's order overruling its objections to the Special Master's ("Master's") denial of LSA's motion to modify or vacate the preliminary injunction. We affirm.

1.    Under 28 U.S.C. § 1292(a)(1), we have jurisdiction over appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." *See, e.g., Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). We stated in *Grunwald*, however, that an order denying a motion to modify or dissolve an injunction is appealable only if the motion is based on a claim of changed circumstances and raises new matter not considered at the time of the injunction. *Id*. Thus, we may review the denial of LSA's motion only if the motion, in substance, "is based on new circumstances that have arisen after the district court granted the injunction." *Id.*

---

** The Honorable James K. Singleton, Jr., Senior United States District Judge for the District of Alaska, sitting by designation.

[1] The parties are familiar with the facts, and we repeat them here only as necessary to explain our decision.

2

LSA claims that the Evolver Report proves it never had the September 2009 Report (2009 Report), and that this change in circumstances allows us to review the denial of its motion to modify or vacate the injunction. Although LSA's interpretation of the Evolver Report is problematic, the report does provide forensic evidence of the extent of Language Line's confidential information on LSA's and its employees' computers. This new information, not known to the district court at the time it issued the preliminary injunction, satisfies the *Grunwald* test and allows us to review LSA's motion.

2. We review for abuse of discretion the "district court's decision denying the motion to modify or dissolve the preliminary injunction," *Grunwald*, 400 F.3d at 1126 n.7, "a district court's decision regarding a preliminary injunction," *Walczack v. EPL Prolong, Inc.*, 198 F.3d 724, 730 (9th Cir. 1999), and the "district court's determination as to the amount and appropriateness of the security required by Rule 65(c)." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). A district court "abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Id.* at 1078-79. We therefore review de novo "any underlying issues of law." *Grunwald*, 400 F.3d at 1126 n.7.

3. LSA argues that the Evolver Report proves it never had the 2009 Report, and that changed circumstances warrant at least modifying the injunction to cover

3

only the information found on LSA's computers. "A district court has inherent authority to modify a preliminary injunction in consideration of new facts." *A&M Records, Inc. v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002). However, the Evolver Report's ultimate conclusion was that LSA still had Language Line's intellectual property on its computers. LSA concedes that the forensic imaging of its computers found sublists containing information on 441 companies that matched the 2009 Report, and that the 2009 Report was found on a thumb drive associated with Schwartz's laptop. Accordingly, the Evolver Report does not support modifying or vacating the preliminary injunction.

4.  LSA next argues that even if Curtin and Schwartz had access to the full 2009 Report, the Evolver Report proves LSA does not have it now, and therefore the injunction must be modified or vacated. Again, this is based on a questionable interpretation of the Evolver Report. Moreover, LSA has admitted that Schwartz and Curtin took and distributed Language Line's confidential information to LSA employees who then used it to solicit Language Line's customers. The Master and the district court could have reasonably concluded that LSA's repeated violations of the injunction undercut LSA's claim that it could no longer use the 2009 Report to harm Language Line.

5. LSA next contends that the injunction should be modified to include only over-the-phone translation services ("OPI"). The Master noted and the district court agreed that this would effectively allow LSA to "have a foot in the door provided by those lists, the very conduct the Injunction seeks to prevent." LSA argues that the Master's conclusion "is only applicable if LSA were going to try and sell OPI services in violation of the injunction," but that "such sales would be very easy to detect and police and would not happen." Nonetheless, in light of LSA's multiple violations of the injunction, the district court did not abuse its discretion in refusing to modify the injunction to include only OPI services.

6. LSA next claims that the injunction should be modified to exclude customers involved in third-party Group Purchasing Organization ("GPO") agreements. According to LSA, under a GPO agreement, vendors get "the benefit of pre-negotiated pricing by a third-party," and when "those negotiations happen, vendors" such as LSA "have no idea who might ultimately sign up to take advantage of the pre-negotiated pricing and terms." Thus, LSA contends that having Language Line's list of customers with pricing data "is irrelevant as there are not individual negotiations with members of a GPO."

Although LSA's assertions have some weight, the Master noted that LSA had not presented evidence as to why GPOs should be treated differently under the

existing injunction, and that without specific evidence subject to cross-examination there was no reason to modify the injunction. On this record, we cannot find that the district court abused its discretion in not modifying the preliminary injunction to exclude GPOs. However, this matter may be ripe for reconsideration in further proceedings in the district court.

7.      LSA next claims that even if at one time it had the 2009 Report, the information on the report is now stale. The Master found that LSA's argument is supported only by its Chief Operating Officer's declaration, and without discovery on the issue this argument does not support modification of the injunction. Given the deferential nature of our review, we find that the district court did not abuse its discretion in refusing to modify the injunction.

8.      When the district court addressed the injunction originally, it considered only Language Line's likelihood of success on the merits and its risk of irreparable harm without the injunction, despite the Supreme Court's holding in *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008), which held that when a district court considers granting an injunction, it must consider not only the likelihood of (1) success on the merits and (2) irreparable harm without an injunction, but also (3) the balance of equities and (4) the public interest. However, the district court's failure to discuss all four elements from *Winter* was

6

harmless error.  *See Johnson*, 572 F.3d at 1084-85 (noting that the district court failed to consider the element of irreparable harm, but affirming because the record supported a finding of likelihood of irreparable harm).  Here, the record supports determinations that the balance of hardships tips in favor of Language Line, and that the injunction is in the public interest.  LSA is not entitled to any relief based on the district court's failure to consider all four parts of the *Winter* test.

9.     LSA incorrectly argues that Federal Rule of Civil Procedure 65(c) requires the posting of a bond.  Despite the mandatory language of Rule 65(c), district courts retain "discretion as to the amount of security required, *if any*." *Id*. at 1086 (internal quotation marks and citation omitted).  Here, LSA made three requests for a bond: (1) when the court issued the injunction; (2) in its motion for reconsideration; and (3) in the amount of $50,000,000 in its motion to modify or vacate the injunction.  The Master rejected this evidence in support of a bond as "speculative [and] conclusory," and the district court rejected it "because the court ha[d] already denied the request on several occasions."  Given the lack of objective evidence of damages and the deferential nature of the abuse of discretion standard, we affirm the district court's decision to deny LSA's request for a $50,000,000 bond.

However, we note that the district court failed to articulate its reasons for denying LSA's request for a bond. We have held that despite the "seemingly mandatory language" of Rule 65(c), a district court has discretion as to the amount of security required. *Johnson*, 572 F.3d at 1086. "We review for abuse of discretion a district court's determination as to the amount and appropriateness of the security required by Rule 65(c)." *Id*. Absent a clear statement by the district court concerning its reasons for requiring or not requiring a bond, we may not be able to discern the district court's reasons for its action. In the future, the district court's orders granting injunctive relief should include explanations for its exercise of discretion under Rule 65(c).

Finally, we express concerns with two aspects of this case. First, the district court erroneously applied a clear error standard of review to the Master's findings of fact and conclusions of law instead of conducting de novo review. Fed. R. Civ. P. 53(f)(3), (4). Second, it has been almost a year since the district court denied LSA's motion to modify or vacate the preliminary injunction and more than two years since the issuance of the injunction. Preliminary injunctions are ambulatory remedies, designed for "preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*,739 F.2d 1415, 1422 (9th Cir. 1984). Preserving the status quo implicitly recognizes

8

that the parties' rights may change over time, and it does not justify indefinitely extending a preliminary injunction. *See, e.g., Sprint Communications Co. L.P. v. CAT Communications Intern., Inc.*, 335 F.3d 235, 242 (3d Cir. 2003).

As noted, the information in the 2009 Report, which served as the basis for the preliminary injunction, is now over three years old. Judge Ware has retired, and counsel at oral argument indicated that the case is now without district or magistrate judge oversight, further complicating matters. Should LSA move for modification of the injunction, the district court must conduct de novo review of any findings of fact and conclusions of law made by the Master and should consider whether changed circumstances support modifications of the preliminary injunction, particularly on such issues as its application to GPOs.

The denial of LSA's motion to modify or vacate is **AFFIRMED.**