# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| BOWFIN KEYCON HOLDINGS, LLC; CHIEF POWER FINANCE II, LLC; CHIEF POWER TRANSFER PARENT, LLC; KEYCON POWER HOLDINGS, LLC; GENON HOLDINGS, INC.; PENNSYLVANIA COAL ALLIANCE; UNITED MINE WORKERS OF AMERICA; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; AND INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, | : : : : : : : : : : : : : : | No. 80 MAP 2022<br><br>Appeal from the Order of the Commonwealth Court at No. 247 MD 2022 dated July 8, 2022. |
| Appellees | : : : : : | |
| v. | : : : : : : : | |
| PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION AND PENNSYLVANIA ENVIRONMENTAL QUALITY BOARD, | : : : : : : : : | |
| Appellants | : | |
| | | |
| BOWFIN KEYCON HOLDINGS, LLC; CHIEF POWER FINANCE II, LLC; CHIEF POWER TRANSFER PARENT, LLC; KEYCON POWER HOLDINGS, LLC; GENON HOLDINGS, INC.; PENNSYLVANIA COAL ALLIANCE; UNITED MINE WORKERS OF AMERICA; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; AND INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS | : : : : : : : : : : : : : : : : | No. 86 MAP 2022<br><br>Appeal from the Order of the Commonwealth Court at No. 247 MD 2022 dated June 28, 2022. |
| v. | : | |

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION AND PENNSYLVANIA ENVIRONMENTAL QUALITY BOARD,

APPEAL OF: CITIZENS FOR PENNSYLVANIA'S FUTURE, SIERRA CLUB, AND CLEAN AIR COUNCIL,

    Possible Intervenors

BOWFIN KEYCON HOLDINGS, LLC; CHIEF POWER FINANCE II, LLC; CHIEF POWER TRANSFER PARENT, LLC; KEYCON POWER HOLDINGS, LLC; GENON HOLDINGS, INC.; PENNSYLVANIA COAL ALLIANCE; UNITED MINE WORKERS OF AMERICA; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; AND INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS

    v.

PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION AND PENNSYLVANIA ENVIRONMENTAL QUALITY BOARD,

APPEAL OF: CITIZENS FOR PENNSYLVANIA'S FUTURE, SIERRA CLUB, AND CLEAN AIR COUNCIL,

    Possible Intervenors

No. 88 MAP 2022

Appeal from the Order of the Commonwealth Court at No. 247 MD 2022 dated June 28, 2022.

[80 MAP 2022, 86 MAP 2022, 88 MAP 2022, 89 MAP 2022]

2

BOWFIN KEYCON HOLDINGS, LLC;     :    No. 89 MAP 2022
CHIEF POWER FINANCE II, LLC; CHIEF   :
POWER TRANSFER PARENT, LLC;      :    Appeal from the Order of the
KEYCON POWER HOLDINGS, LLC;      :    Commonwealth Court at No. 247
GENON HOLDINGS, INC.;            :    MD 2022 dated July 8, 2022.
PENNSYLVANIA COAL ALLIANCE;      :
UNITED MINE WORKERS OF AMERICA;  :
INTERNATIONAL BROTHERHOOD OF     :
ELECTRICAL WORKERS; AND          :
INTERNATIONAL BROTHERHOOD OF     :
BOILERMAKERS, IRON SHIP BUILDERS, :
BLACKSMITHS, FORGERS AND         :
HELPERS                          :
                                 :
                Appellants       :
                                 :
        v.                       :
                                 :
                                 :
                                 :
PENNSYLVANIA DEPARTMENT OF       :
ENVIRONMENTAL PROTECTION AND     :
PENNSYLVANIA ENVIRONMENTAL       :
QUALITY BOARD                    :
                                 :
                Appellees        :

## CONCURRING STATEMENT

**JUSTICE WECHT**                            **FILED: March 24, 2023**

The action docketed at 89 MAP 2022 is a direct appeal from the Commonwealth

Court's order granting an application for a preliminary injunction. That application was

filed by Bowfin KeyCon Holdings, Chief Power Finance II, Chief Power Transfer Parent,

KeyCon Power Holdings, GenOn Holdings, Pennsylvania Coal Alliance, the United Mine

Workers of America, the International Brotherhood of Electrical Workers, and the

International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and

Helpers (collectively, Bowfin). On this appeal, Bowfin challenges the Commonwealth

Court's imposition of a $100 million bond to secure the injunction.[1]  I offer this concurring statement in support of our *per curiam* affirmance of the Commonwealth Court's order[2] to the extent that it imposed a bond as required by Rule 1531(b)(1) of the Pennsylvania Rules of Civil Procedure.

The Department of Environmental Protection and the Environmental Quality Board have developed a "Trading Program Regulation" ("the Rulemaking") to reduce $CO_2$ emissions from Pennsylvania sources and to allow Pennsylvania to participate in the Regional Greenhouse Gas Initiative (RGGI).  The RGGI is a regional $CO_2$ emissions trading program, pursuant to Executive Order 2019-07 and the Air Pollution Control Act (APCA), 35 P.S. §§ 4001-4015.  Two days after the Legislative Reference Bureau (LRB) published the Rulemaking on April 23, 2022, Bowfin filed an original jurisdiction action in the Commonwealth Court challenging the Rulemaking and seeking declaratory and injunctive relief against DEP and EQB (collectively, "the Commonwealth").  Bowfin also filed an application for a preliminary injunction, seeking to enjoin implementation, administration, and enforcement of the Rulemaking.

On July 8, 2022, following a hearing on the preliminary injunction application, the Commonwealth Court, in a single-judge order by Judge Wojcik, granted the preliminary injunction in favor of Bowfin, enjoining the implementation, administration, or enforcement

---

[1]    *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.*, 247 M.D. 2022 (Cmwlth. Ct. June 28, 2022) (order granting preliminary injunction).

[2]    Pa.R.C.P. 1531(b)(1).

of the Rulemaking.[3] The consequence of the preliminary injunction in favor of Bowfin was to preclude Pennsylvania from participating in an auction for carbon allowances in September 2022. Consistent with Rule 1531(b)(1),[4] the Commonwealth Court's order required Bowfin to file a $100 million bond to secure the preliminary injunction by July 22, 2022.[5] Bowfin sought reconsideration of the bond requirement. On July 22, 2022, the

---

[3] The Commonwealth Court also enjoined the same conduct in favor of several members of the Pennsylvania Senate as intervenors in a related case, *Ziadeh v. Legislative Reference Bureau*, 41 M.D. 2022 (Pa. Cmwlth. July 8, 2022). Appeals in the *Ziadeh* case are presently pending at 79, 85, and 87 MAP 2022.

[4] Rule 1531(b) provides:

(b) Except when the plaintiff is the Commonwealth of Pennsylvania, a political subdivision or a department, board, commission, instrumentality or officer of the Commonwealth or of a political subdivision, a preliminary or special injunction shall be granted only if

(1) the plaintiff files a bond in an amount fixed and with security approved by the court, naming the Commonwealth as obligee, conditioned that if the injunction is dissolved because improperly granted or for failure to hold a hearing, the plaintiff shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees, or

(2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court to be held by the prothonotary upon the same condition as provided for the injunction bond.

Pa.R.Civ.P. 1531(b).

[5] *Bowfin*, 247 M.D. 2022 (order granting preliminary injunction subject to $100 million bond).

[80 MAP 2022, 86 MAP 2022, 88 MAP 2022, 89 MAP 2022]

Commonwealth Court denied reconsideration but granted Bowfin an additional thirty days to comply.[6]

On August 8, 2022, Bowfin filed a notice of appeal from the July 8, 2022 order (as amended by the July 22, 2022 order) issuing the preliminary injunction subject to the $100 million bond. On August 16, 2022, Bowfin filed an application in this Court for an order modifying the injunction during the pendency of the appeal, seeking reduction of the bond to a nominal amount. Recognizing that disposing of Bowfin's application required review of the Commonwealth Court's decision for an abuse of discretion,[7] on August 18, 2022, we stayed the Commonwealth Court's July 22, 2022 order and directed the Commonwealth Court to issue an opinion in support of its imposition of the $100 million bond.[8] We further directed the Commonwealth Court to address the individual grounds that Bowfin had raised against the bond amount.

The Commonwealth Court complied with our directive on August 25, 2022, noting in a supplemental opinion that Bowfin "did not present any evidence or argument during the course of the preliminary injunction hearing with respect to the amount of any potential bond should the court find in their favor," nor did Bowfin's application for reconsideration request a further hearing with regard to the bond amount. Furthermore, the court was

---

[6]     *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.*, 247 M.D. 2022 (Pa. Cmwlth. July 22, 2022) (order denying application to reconsider bond amount and extending the period within which to file the bond).

[7]     *See Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 671 (Pa. 1975).

[8]     *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.,* 89 MAP 2022 (Pa. Aug. 18, 2022) (directing the Commonwealth Court to issue a supplemental opinion and staying the Commonwealth Court's order of July 22, 2022, which had given Bowfin until August 22, 2022 to post bond).

unaware of what actions, if any, Bowfin had taken to attempt to comply with the bond requirement or why it was impossible to do so.[9]

The Commonwealth Court rejected Bowfin's argument that the Commonwealth was not exposed to damages due to the preliminary injunction. Rather, according to the Commonwealth Court and based upon the record before it, DEP stood to gain over $200 million from the September 7, 2022 RGGI auction.[10] Those funds would have been deposited into the Clean Air Fund and used to fight air pollution. The Commonwealth Court opined that the loss of these proceeds constituted the Commonwealth's damages resulting from the preliminary injunction.

The Commonwealth Court also rejected Bowfin's argument that the $100 million figure represented lost proceeds from all covered sources. According to the Commonwealth Court, the amount of $CO_2$ emitted from the Keystone and Conemaugh Generating Stations, which are operated by Bowfin, was 15.5 million tons in 2021. At the September 2022 auction, RGGI required covered sources to account for their emissions beginning July 1, 2022. Dividing 15.5 million tons in half (7.75 million tons) to represent the emissions for half a year, multiplied by the most recent auction price of $13.50 per allowance, came to $104,625,000. This is the amount that Bowfin would have spent for the two generating stations based upon the prior year's emissions at the September 2022 auction. The Commonwealth Court rounded this figure down to $100 million, noting that

---

[9] *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.*, 247 M.D. 2022 (Pa. Cmwlth. Aug. 25, 2022) (opinion in support of July 8, 2022 and July 22, 2022 orders) at 9.

[10] *Id*. at 5.

it was neither excessive nor inequitable, as it was based on only two of Bowfin's generating stations.

The Commonwealth Court further rejected the argument that no bond was warranted because a preliminary injunction had also been entered in favor of the Senate Intervenors in the related case of *Ziadeh*. The Commonwealth Court reasoned that each preliminary injunction stands on its own merits.

On September 8, 2022, this Court denied Bowfin's application to modify the injunction during the pendency of appeal and required Bowfin to submit the required bond by September 15, 2022.[11] Justices Mundy and Brobson filed dissenting statements, and Justice Dougherty noted his dissent. On September 15, 2022, Bowfin notified the Commonwealth Court that it would not be submitting the bond that this Court and the Commonwealth Court had ordered, asserting simply that "it is not feasible for [Bowfin] to file the $100 million bond and [it is] unable to obtain it."[12]

On appeal,[13] Bowfin raises four arguments to support its position that the Commonwealth Court abused its discretion when it set the bond at $100 million. Bowfin's first argument is premised upon the language of Rule 1531(b)(1), which requires a

---

[11]     *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.*, 89 MAP 2022 (Pa. Sept. 8, 2022) (order denying application for order modifying injunction during pendency of appeal).

[12]     Letter from Bowfin, A. Holtzman, Sept. 15, 2022.

[13]     We have jurisdiction over this interlocutory appeal as of right from an order granting or denying injunctive relief. *See* 42 Pa.C.S. § 723 (affording jurisdiction over appeals from final orders of the Commonwealth Court); Pa.R.A.P. 311(a)(4) (providing that an appeal may be taken as of right from "[a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction.").

preliminary injunction bond in case the injunction is dissolved. If the dissolution comes to pass, the plaintiff is required to pay "to any person injured all damages sustained by reason of granting the injunction."[14] Bowfin argues that the Commonwealth's inability to collect auction proceeds is not a "loss" or "injury," and, therefore, is not "damages" under Rule 1531(b)(1),[15] because it derives from the Commonwealth's unilateral attempt to confer regulatory authority upon itself to collect money to spend on air pollution control initiatives. As support for this proposition, Bowfin relies upon the Dissenting Statements of Justices Mundy and Brobson objecting to our denial of Bowfin's application to reduce the bond amount on appeal.[16] Bowfin further argues that the Commonwealth is not a "person" under Rule 1531(b) as that term is defined in Rule of Civil Procedure 76.[17]

In its second argument, Bowfin asserts that the preliminary injunction order has not prevented the Commonwealth from collecting the RGGI auction proceeds in connection with the September 7, 2022 auction. Rather, Bowfin argues, the

---

[14]   Pa.R.Civ.P. 1531(b)(1).

[15]   *See* BLACK'S LAW DICTIONARY (7th ed. 2000) at 320 (defining "damages" to mean "money claimed by, or ordered to be paid to, a person as compensation for loss or injury").

[16]   *See Bowfin KeyCon Holdings, LLC v. Pa. Dep't of Env't Prot.*, 282 A.3d 688, 694 (Pa. Sept. 8, 2022) (*per curiam*) (Brobson, J., dissenting) ("There is no record evidence or finding by the Commonwealth Court below that *the absence of this new program or revenue—i.e.,* the *status quo ante* the Rulemaking—has inflicted injury on the Commonwealth compensable in damages.") (emphasis in original); *id*. at 691 (Mundy, J., dissenting) (opining that the Commonwealth would suffer only a deferral of the ability to recognize a benefit, which represents a short-term opportunity cost and should not be viewed as damages).

[17]   Rule 76 provides that "unless the context clearly indicates otherwise," "'person,' includes a corporation, partnership and association, as well as a natural person." Pa.R.Civ.P. 76.

[80 MAP 2022, 86 MAP 2022, 88 MAP 2022, 89 MAP 2022]

Commonwealth's inability to collect these proceeds was due to the separate preliminary injunction order entered in *Ziadeh* (and presently on appeal at 79 MAP 2022). Bowfin believes that the Commonwealth Court erred in concluding that the Senate Intervenors' preliminary injunction has no relevance. Bowfin agrees with Justice Mundy that, "[b]ecause DEP is prevented from participating in the September 2022 auction by virtue of the injunction in *Zaideh*, DEP's opportunity costs do not arise 'by reason of granting the injunction' in the present case for purposes of Rule 1531(b)(1)."[18]

Third, Bowfin argues that the bond amount is excessively high and inequitable. Bowfin believes that the equities in this case require only a nominal bond. According to Bowfin, it would have been able to fold any costs associated with participating in the September 2022 auction into its sale of electricity to consumers, and thereby recover the costs of the auction proceeds. But with the bond requirement, Bowfin claims, it loses its ability to pass this cost on to consumers. Bowfin avers that it is worse off having to post a $100 million bond than it would have been had it not sought the injunction in the first instance. Bowfin also asserts that it is being forced to bear the cost of the bond alone, whereas the generators of the remainder of the sixty-six covered sources that would have participated in the September 2022 auction receive the benefit of the injunction as a windfall without sharing in the cost. According to Bowfin, the excessive bond amount has effectively denied it meaningful access to the judicial system.

---

[18] *Bowfin KeyCon Holdings, LLC v. Pa. Dep't of Env't Prot.*, 282 A.3d 688, 691 (Pa. 2022 Sept. 8, 2022) (*per curiam*) (Mundy, J., dissenting).

The Commonwealth responds that Bowfin never made its Rule 1531(b)(1) "person" argument in the Commonwealth Court, and that it is therefore waived.[19] Alternatively, the Commonwealth argues, there is no support for holding that a bond is not required when the party being enjoined is the Commonwealth, as Rule 1531(b)'s exception for a bond *from* Commonwealth entities indicates that there is no similar exception for bonds to cover damages *to* Commonwealth entities. The Commonwealth argues that the Commonwealth Court correctly determined that the loss of the September 2022 auction proceeds constituted damages because the Commonwealth would have received these proceeds had its participation in the auction not been enjoined. Noting that Bowfin offered no evidence on this issue, the Commonwealth argues that the Commonwealth Court's assessment of damages finds ample support in the record.

The Commonwealth further argues that each preliminary injunction order stands on its own, such that the preliminary injunction order on appeal at 79 MAP 2022 does not relieve Bowfin of its own bond obligation under Rule 1531. If Bowfin's injunction is merely duplicative of the one sought by the Senators, the Commonwealth wonders why Bowfin sought it in the first place. The Commonwealth suggests that Bowfin pursued its own preliminary injunction as a form of insurance, in recognition of the possibility that the Senators' injunction might be reversed. Turning to the Commonwealth Court's discretion, the Commonwealth argues that the Commonwealth Court carefully considered the evidence of damages resulting from the injunction (which included no evidence from Bowfin) and explained in great detail its exercise of discretion in settling on an amount.

---

[19] *See* Pa.R.A.P. 302(a).

Rule 1531(b)(1) conditions the grant of a preliminary injunction on the filing of a bond.[20] If the injunction is dissolved, the plaintiff pays "all damages sustained by reason of granting the injunction" from the bond.[21] The bond requirement protects a defendant by supplying a fund to pay damages if the preliminary injunction is granted in error.[22] As the Third Circuit has explained:

> The requirement of security is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers. That protection consists of a promise that the defendant will be reimbursed for losses suffered if it turns out that the order issued was erroneous in the sense that it would not have been issued if there had been the opportunity for full deliberation.[23]

The Third Circuit has also emphasized that "the amount of the bond is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith."[24] Consequently, the bond amount should be sufficient to

---

[20]     Pa.R.Civ.P. 1531(b); *Bowfin v. Pa. Dep't of Env. Protection and Pa. Env. Quality Bd.*, 247 M.D. 2022 (Cmwlth. Ct. Aug. 25, 2022) (Opinion in support of July 8, 2022 and July 22, 2022 orders) at 3 (observing that rule 1531(b)(1) "mandates the imposition of a bond in conjunction with the grant of a preliminary injunction").

[21]     Pa.R.Civ.P. 1531(b)(1).

[22]     *Goodies Olde Fashion Fudge Co. v. Kuiros*, 597 A.2d 141, 144 (Pa. Super. 1991); *Juniata Foods, Inc. v. Mifflin County Dev. Auth.*, 486 A.2d 1035, 1037 (Pa. Cmwlth. 1985) ("The bond requirement in Rule 1531(b)(1) is merely to insure a ready source for payment of damages if due.").

[23]     *American Bible Soc. v. Blount*, 446 F.2d 588, 595 n.12 (3d Cir. 1971) (citing Note, *Interlocutory Injunctions and the Injunction Bond*, 73 HARV.L.REV. 333, 336, 340 (1959)).

[24]     *Sprint Comm'n Co. L.P. v. CAT Comm'n Int'l, Inc.*, 335 F.3d 235, 240 n.5 (3d Cir. 2003) (cleaned up).

encompass reasonably foreseeable damages.[25] The court issuing the injunction has discretion to determine the amount of the bond, and we review the court's determination of the bond amount for an abuse of discretion.[26] "An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record."[27]

The Commonwealth is correct that Bowfin waived its argument that the Commonwealth is not a "person" under Rule 1531(b) by failing to raise that argument to the Commonwealth Court. Our order of August 18, 2022 directed the Commonwealth Court specifically

> to issue an opinion in support of its orders setting the amount of bond and denying Petitioner's Application for Order Modifying Injunction During Pendency of Appeal, addressing the individual grounds raised by Petitioners therein, on or before August 24, 2022.[28]

The "individual grounds raised by" Bowfin to this Court at that time or in the Commonwealth Court in Bowfin's application for reconsideration of the bond requirement did not include this Rule 1531(b)-based argument. Bowfin cannot now, at this late juncture, raise this new ground against the bond amount. It is waived in accord with Rule 302(a) and our order.

---

[25] *Id*. at 240; *see also Green Cnty. Citizens United by Cumpston v. Green County Solid Waste Auth.*, 636 A.2d 1278, 1281 (Pa. Cmwlth. 1994); *Christy v. Tuscany, Inc.*, 533 A.2d 461, 464 (Pa. Super. 1987).

[26] *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 671 (Pa. 1975); *Roth v. Columbia Distrib. Co. of Allentown*, 89 A.2d 825, 830 (Pa. 1952).

[27] *Commonwealth v. Gallaway*, 283 A.3d 217, 223 (Pa. 2022).

[28] *Bowfin v. Pa. Dep't of Env't Prot. and Pa. Env't Quality Bd.,* 89 MAP 2022 (Pa. Aug. 18, 2022) (order).

Turning to whether the Commonwealth's loss of auction proceeds constitutes damages, it was within the Commonwealth Court's discretion to review the evidence before it and to conclude that it was. The preliminary injunction obtained by Bowfin enjoined the Commonwealth from "implementing, administering, or enforcing the Rulemaking."[29] The consequence of this order precluded the Commonwealth's participation in at least the September 2022 allowance auction and possibly future auctions as well. Citing the evidence before it, the Commonwealth Court observed that the Commonwealth expected to receive over $200 million from the September 2022 auction based upon an allowance cost of $13.50 and approximately fifteen million allowances; the auction proceeds would be deposited into the Clean Air Fund, which DEP uses exclusively to combat air pollution; and the Commonwealth's loss of such proceeds constitutes damages resulting from the grant of the preliminary injunction.[30]

Although Bowfin argued to the Commonwealth Court that the Commonwealth would not sustain any damages should the preliminary injunction later be found to have been improperly granted, it offered no evidence in support of this assertion. Bowfin similarly offers no support for its assertion that the Commonwealth's inability to collect the auction proceeds is not a loss or injury for which it is entitled to compensation. If the preliminary injunction is later determined to have been improper, the Commonwealth will have erroneously lost the ability to receive an estimated $200 million from participating in the September 2022 auction. The Commonwealth Court was within its discretion to review the evidence before it and to conclude that the Commonwealth would suffer damages from being precluded from participating in the September 2022 auction.

---

[29] *Bowfin v. Pa. Dep't of Env't Prot., Env't Quality Bd.*, 247 M.D. 2022 (Pa. Cmwlth. Aug. 25, 2022) (opinion in Support of July 8 and 22, 2022 Orders) at 5.

[30] *Id*. at 5-6.

As for the amount of the bond relative to Bowfin in particular, it was, once again, within the Commonwealth Court's discretion to calculate damages and assess them against the party obtaining the preliminary injunction. Bowfin is factually incorrect that the $100 million bond included all of the money that the Commonwealth would have obtained from all covered sources at the September 2022 auction. Rather, the Commonwealth Court relied upon Bowfin's own evidence to conclude that this is the amount that Bowfin alone would have paid at the auction for two of its generating stations. In particular, Mr. Locher, who managed Bowfin's Keystone and Conemaugh generating stations, testified that the two generating stations emitted 15.5 million tons of $CO_2$ in 2021. Dividing 15.5 million tons in half to represent the latter half of 2022 (the time period relevant to the September 2022 auction), and multiplying this figure by the auction price of $13.50, resulted in allowances totaling $104,625,000, which the Commonwealth Court rounded down to $100 million. This amount aligns with the evidence of record, and Bowfin makes no argument to the contrary. Despite ample opportunity to contest the Commonwealth's damages evidence, Bowfin has failed to do so. There was nothing excessive or inequitable about this figure, and certainly no abuse of discretion.

Turning to Bowfin's argument that the Commonwealth suffered no damages because of the preliminary injunction entered in the Secretary's case (and presently on appeal at 79 MAP 2022),[31] the Commonwealth Court correctly held that each injunction stands on its own merits. The plain language of Rule 1531(b) imposes the bond requirement on any plaintiff that successfully obtains a preliminary injunction. In particular, Rule 1531(a) authorizes a court to issue a preliminary injunction, Rule

---

[31] Justice Mundy agrees with Bowfin that no bond was required under Rule 1531(b)(1) because the Commonwealth's loss was not "sustained by reason of granting the injunction," but by reason of the injunction obtained by the Senate Intervenors in *Ziadeh.* Concurring and Dissenting Statement at 5-6.

1531(b)(1) conditions that particular preliminary injunction upon the filing of a bond by "the plaintiff," and requires the same plaintiff to pay damages if that particular injunction is dissolved. The limit of damages, and of the bond, is "all damages sustained by reason of granting the injunction."

Every litigant that resorts to the court to preliminarily enjoin the conduct of another must be prepared to secure that injunction with a bond as required by Rule 1531(b)(1). The fact that another injunction enjoined the same conduct bears no relevance to Bowfin's injunction. Each case is required independently to establish the six requirements for a preliminary injunction[32] and to be conditioned upon the payment of a bond under Rule 1531(b)(1). The Rules of Civil Procedure, including Rule 1531(b)(1), apply independently to Bowfin's action and to the Senate Intervenors' action.

If Bowfin would like to avoid the bond requirement of Rule 1531(b)(1), it could have chosen not to pursue a preliminary injunction and instead to rely upon the injunction obtained in *Ziadeh*. Of course, such a course of action would have run the risk that the preliminary injunction in *Ziadeh* would be dissolved and the allowance auctions would proceed. Bowfin would have engaged in its own calculations to determine whether to run this risk or to seek independently to enjoin the same conduct in accord with Rule 1531(b)(1). Having opted to pursue its own course, Bowfin cannot not now obtain the benefit of its preliminary injunction without the attendant cost.

The Concurring and Dissenting Statement suggests that perhaps Bowfin's bond obligation would be triggered if, and only if, the injunction in *Ziadeh* is dissolved. This possibility is precisely why each injunction stands on its own merits. Putting the burden on the Commonwealth to return to court to seek what Rule 1531(b)(1) already requires in

---

[32]     *SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 502 (Pa. 2014).

order to mitigate Bowfin's failure to post a bond is unnecessary. The consequence of failing to adhere to Rule 1531(b)(1) falls on the plaintiff, not the defendant.

Alleviating Bowfin of its bond obligation at this juncture defies not only Rule 1531(b)(1) but also a direct order of this Court. We directed Bowfin to file the bond by September 15, 2022. Bowfin willfully violated our order. Whether Rule 1531(b)(1) requires a bond or not, our order certainly did. Bowfin now must bear the consequences of this willful defiance.

Interestingly, Bowfin has abandoned its argument that the bond requirement directs it to do something that is infeasible, if not impossible, an argument that it had advanced in the Commonwealth Court and to this Court in its application to reduce the bond amount pending appeal. Perhaps this abandonment manifests recognition that Bowfin abdicated several opportunities to put evidence into the record or otherwise advance the argument that it was not feasible to pay the bond. Knowing that a preliminary injunction is contingent upon a bond, Bowfin introduced no evidence in the Commonwealth Court about what the appropriate bond should be, or about its purported inability to pay any premium required to purchase the bond.[33] Nor did Bowfin seek to open the record to present such evidence in support of its motion for reconsideration challenging the bond amount, nor did it do so in connection with the application to reduce the bond amount filed in this Court. Yet, in defiance of this Court's order, Bowfin informed the Commonwealth Court that it would not be filing the bond because "it is not feasible for [Bowfin] to file the $100 million bond and they are unable to obtain it." These bald

---

[33] At the risk of stating the obvious, I note Bowfin would not pay $100 million in order to obtain the bond. *See generally Guzzetta v. Serv. Corp.,* 7 A.3d 467, 471 (Del. 2010) (observing that "the cost of a bond typically is a very small fraction of its face value").

assertions are unsupported by any evidence, affidavits, verifications, or exhibits, and they remain unsubstantiated.

Considering the proceeds the Commonwealth would lose because of its inability to participate in the September 2022 auction and the amount that two of Bowfin's generating stations would have spent at that auction, the Commonwealth Court was acting within its discretion under Rule 1531(b) to establish the bond requirement herein. Because Bowfin failed to comply with the bond requirement, I would conclude that the preliminary injunction it obtained is a legal nullity. *See Mamula v. United Steelworkers of America*, 185 A.2d 595 (Pa. 1962) (holding that an injunction issued without the filing of a bond was a nullity and that the Court had no jurisdiction over an appeal therefrom).